KIMBERLY McKILLOP, Plaintiff v. ONSLOW COUNTY, Defendant

No. COA99-814

(Filed 18 July 2000)

## 1. Contempt— civil—sufficiency of evidence

Although plaintiff contends there is no evidence that she is the owner, operator, or manager of the adult or sexually-oriented business in question, the trial court did not err by finding plaintiff in civil contempt of an order and injunction upholding a county's ordinance regulating adult or sexually-oriented businesses,

because the evidence revealed that: (1) plaintiff admitted in her original complaint that she previously managed two adult or sexually-oriented businesses that were shut down; (2) plaintiff opened a business adjacent to the site of one of her previous businesses and posted a large sign indicating her business was back; (3) plaintiff exhibited her "specified anatomical areas" to undercover officers at this new establishment, in violation of the ordinance; and (4) plaintiff acknowledged that she was violating the ordinance and the injunction entered against her by reopening her business.

**2. Contempt— civil—county ordinance—adult or sexually-oriented business**

Although plaintiff contends that exhibition of specified anatomical areas in an adult or sexually-oriented business located within 1,000 feet of a residence in itself is not a violation of a county's ordinance, the trial court properly held plaintiff in civil contempt because it is the exhibition of these areas as part of an adult or sexually-oriented business with the intent of sexual stimulation or arousal, and/or sexual fondling or touching within 1,000 feet of the specified places that is the violation of the ordinance.

**3. Contempt— civil—willful failure to comply—plaintiff's invocation of Fifth Amendment right**

The trial court did not err in finding that plaintiff willfully failed to comply with an injunction permanently enjoining plaintiff from operating her two adult or sexually-oriented businesses in violation of a county's ordinance, that plaintiff confirmed she knew she was violating the ordinance and injunction, and that she failed to show cause as to why she should not be held in civil contempt, because: (1) plaintiff admits she chose to invoke her Fifth Amendment right so as to not incriminate herself by testifying at trial, and thereby, she showed no cause why she should not be adjudged in contempt; (2) plaintiff by her refusal to present testimony chose to abandon her claim that she was not in contempt of the trial court's order; and (3) the record is replete with evidence that plaintiff willfully and with stubborn disobedience failed to comply with and knowingly violated the injunction against her.

Appeal by plaintiff from an order entered 21 January 1999 by Judge W. Allen Cobb, Jr. in Onslow County Superior Court. Heard in the Court of Appeals 17 April 2000.

## McKILLOP v. ONSLOW COUNTY

[139 N.C. App. 53 (2000)]

*Jeffrey S. Miller for plaintiff-appellant.*

*Shipman & Associates, L.L.P., by Gary K. Shipman and Carl W. Thurman III, for defendant-appellee.*

HUNTER, Judge.

Kimberly McKillop ("plaintiff") appeals the 21 January 1999 Order of Abatement and Judgment of Civil Contempt entered by the trial court finding her in contempt of the Permanent Injunction issued by the same court on 3 July 1996, and ordering her to immediately comply with the 3 July 1996 order and allowing her to purge herself of contempt. We affirm.

The facts of this case are many and convoluted at best; however, we recite below only those pertinent to the appeal at hand. On or about 20 July 1994, agents of defendant-appellee Onslow County ("County") served notice on plaintiff that as of 21 September 1994, the county intended to enforce its "Ordinance to Regulate Adult Businesses and Sexually Oriented Businesses" ("Ordinance") in Onslow County, against plaintiff and her two businesses. Through a number of lawsuits and counter-lawsuits, plaintiff pursued having the Ordinance declared "invalid and unconstitutional" and seeking a preliminary injunction "enjoining and restraining the [County] from enforcing [the Ordinance]," and; the County pursued having the Ordinance declared valid and constitutional and praying the court "permanently enjoin the Plaintiff from operating [her businesses] Amy's Playhouse and Private Pleasures as nonconforming adult businesses and sexually oriented businesses."

On 3 July 1996 the trial court, finding the Ordinance valid, ordered plaintiff's complaint dismissed with prejudice. The trial court further ordered that:

> The Plaintiff, her agents, servants, employees and other persons in active concert therewith, are enjoined and restrained from violating, and are ordered specifically to comply with, the provisions of the Ordinance, . . . and specifically:
>
> a. shall not own and/or operate and/or manage any sexually oriented business, in any building located within one thousand (1,000) feet in any direction from a residence, a house of worship, a public school, or a public playground.

McKILLOP v. ONSLOW COUNTY

[139 N.C. App. 53 (2000)]

b. shall not exhibit any specified anatomical areas or engage in any specified sexually activities, as defined by the Ordinance, in any business located within one thousand (1,000) feet in any direction from a residence, a house of worship, a public school, or a public playground;

c. shall cease to operate Private Pleasures and Amy's Playhouse in a manner inconsistent with the Ordinance, and specifically, as a sexually oriented business.

However on appeal, the pertinent outcome of this Court's and our Supreme Court's rulings were that the County's Ordinance was "a valid exercise of the general police powers granted to the County by the General Assembly," thus the County had a right to enforce the Ordinance, requiring plaintiff to comply. *Onslow County v. Moore*, 129 N.C. App. 376, 382, 499 S.E.2d 780, 785 (1998). (For more information, *see Onslow County v. Moore*, 127 N.C. App. 546, 491 S.E.2d 670 (1997); *Onslow County v. Moore*, 347 N.C. 672, 500 S.E.2d 88 (1998).)

On 5 October 1998, the County moved for an order to show cause why plaintiff should not be held in civil contempt; which motion was allowed. That show cause hearing resulted in the County presenting affidavits in support of its position, while plaintiff refused to present evidence on the ground that she might incriminate herself in a pending criminal suit. As a result, on 21 January 1999 the trial court concluded that plaintiff was in violation of its 3 July 1996 order, finding in pertinent part that:

4. In September of 1998, the Plaintiff opened a business adjacent to the site of one of her previous businesses and posted a large sign indicating "Amy's Back." On September 24, 1998 . . . a detective with the Onslow County Sheriff's Department [Officer John], entered a business identified on an interior door as Amy's Playhouse. . . . Upon entering . . . he was greeted by a female who introduced herself as "Amy". Officer John recognized the female to be [plaintiff]. . . .

5. . . . [Plaintiff] completely removed her bra. . . . She [further] demonstrated some of the tip enhancements by "talking dirty", and touching her bare breasts and sliding her hand inside her panties and massaging her vaginal area. . . .

6. . . . She began rubbing her body against [Officer John] and ran her hands along his torso, arms, thighs and then started rubbing his genital area. . . .

7. During the session, [plaintiff] exhibited a "Specified Anatomical Area" as defined under the Ordinance . . . , namely her bare breasts.

8. On September 25, 1998, [Officer] John returned to Amy's Playhouse. . . .

9. During the session, [plaintiff] again exhibited a "Specified Anatomical Area" as defined under the Ordinance . . . , namely her bare breasts.

10. [Plaintiff's] violation of the Ordinance and this Court's Order has been both knowing and for personal gain. [Plaintiff] acknowledged to Detective W.L. Condry of the Onslow County Sheriff's Department that she was aware of the Order of this Court and that her actions violated the Ordinance, yet she chose to violate both the Order of this court and the Ordinance. After [plaintiff] was arrested on October 1, 1998, for violating the Ordinance, Detective Condry advised [plaintiff] of her rights and conducted an interview with her.

11. During the interview, [plaintiff] confirmed that she knew she was violating the Ordinance and the injunction entered against her by reopening her business. She further indicated that she saw penalties under the Ordinance as a cost of doing business and "liked paying taxes on $250,000.00 per year." [Plaintiff] also indicated that she intended to continue operating her business because of the money she could make and because she did not believe the Ordinance was constitutional.

. . .

13. [Plaintiff] has and continues to operate a sexually oriented business and adult business as defined under the Ordinance.

14. The Plaintiff knew, based upon her personally engaging in the act of exposing her bare breasts for a fee, that she was exhibiting "specified anatomical areas" in a sexually oriented or adult business located within 1,000 feet of a residence.

McKILLOP v. ONSLOW COUNTY

[139 N.C. App. 53 (2000)]

15. The Plaintiff has willfully failed to comply with the provisions of the Permanent Injunction, in that the Plaintiff has possessed the means to comply with the Permanent Injunction at all times since the entry of the Order.

16. The Plaintiff has shown *no* cause why she should not be adjudged in contempt of this Court for her willful failure to abide by the provisions of the Permanent Injunction, opting, instead, to invoke the Fifth Amendment privilege against self incrimination.

(Emphasis in original.) Thus the trial court held plaintiff in contempt.

[1] Plaintiff has preserved ten assignments of error. However, due to our disposition of her appeal, we need address only three. We first address plaintiff's assigning error to the trial court's finding that she is in contempt. Plaintiff contends that there was no evidence that she was the owner, operator, or manager of the business in question, specifically, "Amy's Back." We find plaintiff's argument unpersuasive.

We begin by noting that plaintiff, in violation of N.C.R. App. P. 28(b)(5), cites almost no authority upon which she bases her arguments before this Court. That rule clearly states that "[a]ssignments of error not set out in the appellant's brief, *or in support of which no* reason or argument is stated or *authority cited, will be taken as abandoned.* [Furthermore,] [t]he body of the argument *shall contain citations of the authorities upon which the appellant relies. . . .*" N.C.R. App. P. 28(b)(5) (1999) (emphasis added). Nonetheless, we choose to go forward and address plaintiff's appeal on its merits.

It is well established that this Court's

review of contempt proceedings is confined to whether there is competent evidence to support the [trial court's] findings of fact and whether those findings support the judgment. *McMiller v. McMiller,* 77 N.C. App. 808, 336 S.E.2d 134 (1985); *Cox v. Cox,* 10 N.C. App. 476, 179 S.E.2d 194 (1971). . . .

*Koufman v. Koufman,* 97 N.C. App. 227, 230, 388 S.E.2d 207, 209 (1990), *reversed on other grounds,* 330 N.C. 93, 408 S.E.2d 729 (1991). Furthermore,

[t]he statutes governing proceedings for civil contempt . . . cases clearly assign the burden of proof to the party alleged to be [in contempt]. Civil contempt proceedings are initiated by a party interested in enforcing the [trial court's] order by filing a motion

in the cause. . . . The opposing party must then show cause why [s]he should not be found in contempt.

*Plott v. Plott*, 74 N.C. App. 82, 85, 327 S.E.2d 273, 275 (1985).

The record before us reveals that in her original complaint, plaintiff admitted that she managed the two businesses, specifically, "Amy's Playhouse located at 3054 Wilmington Highway South and Private Pleasures located at 2247 Richlands Highway." In the court order imposing the permanent injunction upon plaintiff, the court specifically found that both of her establishments were in violation of the Ordinance. Plaintiff does not dispute this finding, except to say that the mere "exhibition of 'specified anatomical areas in a sexually oriented or adult business located within 1,000 feet of a residence' in itself is not a violation of the Ordinance" (a contention we will address below). Neither does plaintiff dispute the finding that she "and K. Hope, Inc., a corporation owned and/or controlled by [plaintiff], which corporation purportedly is the actual 'owner' of these businesses, are in privity with one another."

The County's witness, Detective Sergeant W. L. Condry ("Det. Condry"), testified that although plaintiff shut down her two above-named businesses, about a year later she reopened the business under the guise of "Amy's Back." Det. Condry further stated that he had measured the distance between the trailer, in which "Amy's Back" was housed, and the nearest residence and that distance was seventy (70) feet. Detective Todd John ("Det. John") testified that on the two occasions he entered "Amy's Back" (which was in effect "Amy's Playhouse," having a sign inside which displayed the name "Amy's Playhouse"), plaintiff introduced herself as "Amy," welcomed him in, directed him to a price list from which he was to choose the desired service(s) and then took his money from him and proceeded to provide the sexual service he paid for—including displaying her bare breasts to him. Additionally, at trial, the County produced affidavits and testimonies from officers stating that plaintiff had bared her breasts and genitals as part of their "sessions" with her. Thus, we conclude that the record contains competent evidence upon which the trial court could find that plaintiff did in fact own, operate, and/or manage "Amy's Back." Having concluded thusly, we need not address two of plaintiff's assignments of error regarding whether she opened the business or posted the sign, and whether there was evidence that she was continuing to operate a sexually oriented business and adult business as defined. Furthermore, because the record supports the

finding that plaintiff did own, operate and/or manage "Amy's Back," we need address plaintiff's assignment of error regarding the trial court's requiring her to remove items from the business and close "Amy's Back" down, only by saying that we affirm the trial court's order in that regard.

**[2]** Next, we address plaintiff's contention that "exhibition of 'specified anatomical areas in a sexually oriented or adult business located within 1,000 feet of a residence' in itself is not a violation of the Ordinance"; and therefore, she has not violated the Ordinance. We find this argument completely without merit.

Plaintiff rests her argument on the idea that "[n]othing in the Ordinance addresses enforcement against people who exhibit anatomical areas." However, the Ordinance unambiguously reads:

(i) A *Sexually Oriented business shall further be defined as any business activity*, club or other establishment, within which the exhibition, showing, rental, or sale of materials distinguished or characterized by an emphasis on material depicting, describing, or *exhibiting specified anatomical areas or relating to specified sexual activities* is permitted. . . .

(ii) No Sexually Oriented Business shall be permitted in any building:

(a) *located within 1000 feet in any direction from a building used as a residence or dwelling.*

(b) located within 1000 feet in any direction from a building in which an adult business or a sexually oriented business is located.

(c) located within 1000 feet in any direction from a building used as a church, synagogue, or other house of worship.

(d) located within 1000 feet in any direction from a building used as a public school or as a state licensed day care center.

(e) located within 1000 feet in any direction from any lot or parcel on which a public playground, public swimming pool, or public park is located.

Ordinance Article V(B)(i), (ii) (emphasis added). Additionally, the Ordinance defines specified anatomical areas as "human genitals, pubic regions, buttocks and female breasts below a point immedi-

ately above the top of the areola" (Ordinance Article IV(i)); and specified sexual activities as:

a. Human genitals in a state of sexual stimulation or arousal;

b. Acts of human masturbation, sexual intercourse, sodomy; or

c. Fondling or other erotic touchings of human genitals, pubic regions, buttocks or female breasts.

Ordinance Article IV(j)(a), (b), (c).

Thus, plaintiff is correct in that the exhibition of "specified anatomical areas" alone is not the violation, it is the exhibition of these areas *as part of a sexually oriented business or an adult business* with the intent of sexual stimulation or arousal, and/or sexual fondling or touching within 1,000 feet of the specified places that is the violation of the Ordinance. Plaintiff does not argue that the finding of the trial court that she and other women within her business were exhibiting their "specified anatomical areas" was error, neither does she dispute the court's finding that the business was within 1,000 feet of a residence. We further note that this Court upheld the trial court's enjoining plaintiff's businesses ("Amy's Playhouse" and "Private Pleasures") from operating with 1,000 feet of a residence, house of worship, or public school or playground, finding it proper (*Moore*, 129 N.C. App. at 386, 499 S.E.2d at 787); and plaintiff's current business, "Amy's Back" is housed adjacent to where "Private Pleasures" had been housed, displaying an "Amy's Playhouse" sign inside. Therefore, we hold that the record supports the trial court's conclusion of law that plaintiff's businesses were in violation of the Ordinance.

[3] We next address plaintiff's argument that the trial court erred in finding that she willfully failed to comply with the injunction; that she confirmed she knew she was violating the Ordinance and injunction; and, that she failed to show cause as to why she should not be held in contempt.

It is true that intent is a necessary element in a finding of contempt.

Although the statutes governing civil contempt do not expressly require willful conduct, *see* N.C. Gen. Stat. §§ 5A-21 to 5A-25 (1986), case law has interpreted the statutes to require an element of willfulness. *Smith v. Smith*, 121 N.C. App. 334, 336, 465 S.E.2d 52, 53-54 (1996). In the context of a failure to comply

with a court order, the evidence must show that the person was guilty of "knowledge and stubborn resistance" in order to support a finding of willful disobedience. *Hancock v. Hancock*, 122 N.C. App. 518, 525, 471 S.E.2d 415, 419 (1996). . . .

*Sharpe v. Nobles*, 127 N.C. App. 705, 709, 493 S.E.2d 288, 290-91 (1997). Therefore, this Court is

> required to examine the record to determine whether competent evidence is present to support this key finding and the corresponding conclusion of law holding that defendant was in willful contempt of the [3 July 1996] order. Our Court has held that one may not be held in civil contempt for failure to comply with an order of the court *unless* his or her failure is willful. *Powers v. Powers*, 103 N.C. App. 697, 705, 407 S.E.2d 269, 273-74 (1991) (*citing Jones v. Jones*, 52 N.C. App. 104, 278 S.E.2d 260 (1981)). Accordingly, we must determine from the evidence presented whether defendant's actions were willful or unintentional.

*Blazer v. Blazer*, 109 N.C. App. 390, 393, 427 S.E.2d 139, 141 (1993) (emphasis added). Thus, if the record cannot support the trial court's finding that plaintiff *willfully* failed to comply with or knowingly violated the injunction, then her contempt judgment must be reversed.

Ordinarily, the argument plaintiff poses would raise an issue of credibility—that is, whether plaintiff's evidence or the County's evidence is more credible. As such, it would be within "the province of the trial court to resolve this conflict." *Koufman*, 97 N.C. App. at 231, 388 S.E.2d at 209. *See also Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). However, in the case at bar, plaintiff bases her argument on the fact that she refused to testify at trial on the basis that she might incriminate herself in the concurrently running criminal trial against her, and that the County's only witness to confirm that plaintiff knew she was violating the Ordinance and the court's order, Det. Condry, was uncorroborated.

This Court was faced with this same issue in *Cantwell v. Cantwell*, 109 N.C. App. 395, 427 S.E.2d 129 (1993), where the defendant in a divorce action, seeking alimony, invoked her Fifth Amendment privilege when her husband sought to prove she had been unfaithful to him. The Court stated:

> The constitutional privilege against self-incrimination assures all individuals that they will not be compelled to give tes-

timony which will tend to incriminate them or which will tend to subject them to fines, penalties or forfeiture. *Allred v. Graves*, 261 N.C. 31, 35, 134 S.E.2d 186, 190 (1964). . . . Therefore [where there is the threat of prosecution,] the defendant could properly invoke the privilege in the course of her deposition testimony. *See* N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (1990) (in a civil action parties may obtain discovery regarding relevant matters except those that are privileged).

While we recognize that the defendant in the present case had the right to invoke her privilege against self-incrimination, "[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege . . . ." *Brown v. United States*, 356 U.S. 148, 156, 2 L. Ed. 2d 589, 597[,] *reh'g denied*, 356 U.S. 948, 2 L. Ed. 2d 822 (1958) (a party witness in a criminal case cannot present testimony on direct examination and then invoke the privilege on cross-examination); *see also Pulawski v. Pulawski*, 463 A.2d 151, 157 (R.I. 1983) (as between private litigants, the privilege against self-incrimination must be weighed against the right of the other party to due process and a fair trial). The privilege against self-incrimination is intended to be a shield and not a sword. *Pulawski*, 463 A.2d at 157; *Christenson v. Christenson*, 162 N.W.2d 194, 200 (Minn. 1968). Therefore, "if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense[,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense." *Christenson*, 162 N.W.2d at 200 (citation omitted).

*Id.* at 397, 427 S.E.2d at 130-31. Finding *Christenson* persuasive and instructive, this Court held "a party has a right to seek affirmative relief in the courts, but if in the course of her action she is faced with the prospect of answering questions which might tend to incriminate her, she must either answer those questions or abandon her claim." *Id.* at 398, 427 S.E.2d at 131.

Furthermore, it is well established that North Carolina law allows the trier of fact to infer guilt on a civil defendant who, having the opportunity to refute damaging evidence against her, chooses not to. The finder of fact in a civil cause may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his

truthful testimony would have been unfavorable to him. *Fedoronko v. American Defender Life Ins. Co.*, 69 N.C. App. 655, 657-58, 318 S.E.2d 244, 246 (1984).

This scenario has often come to bar in cases of alienation of affection, criminal conversation and adultery. In one such case, the plaintiff and the private detective he hired followed his wife and the defendant to a condominium. Having observed the lights inside the condominium go out and neither his wife's nor the defendant's cars move from their parking spaces, plaintiff filed for divorce citing adultery as the reason. At trial, when the defendant refused to answer questions on the grounds that he might incriminate himself, this Court opined:

> "Plaintiff's charge against defendant was adultery; if the evidence of so serious a charge was not true, the defendant had the opportunity to refute it. Whether the charge was true or not, the falsity of it was peculiarly within defendant's knowledge. The fact that [he] did not refute the damaging charge made by plaintiff, it may be that this was a silent admission of the charge made against [him]."

*Gray v. Hoover*, 94 N.C. App. 724, 729, 381 S.E.2d 472, 475, *disc. review denied*, 325 N.C. 545, 385 S.E.2d 498 (1989) (*quoting Walker v. Walker*, 201 N.C. 183, 184, 159 S.E. 363, 364 (1931)).

In the case at bar, we find both *Cantwell* and *Gray* dispositive. The County produced evidence that plaintiff had, on several occasions after the injunction, shown her breasts and pubic areas to undercover police officers as well as masturbated and fondled those officers and other women as part of her business—for money—in a building less than 1,000 feet from a residence. The County further presented evidence, by way of Det. Condry's testimony and affidavit, that plaintiff had made statements that she had reopened her business, even though she knew she was in violation of the injunction, because she "liked paying taxes on $250,000.00 per year." Therefore, because "[plaintiff] never refuted the serious allegation[s] . . . lodged against her . . . her refusal to testify about the nature of her [business] and her failure to refute the charge[s] [against her] logically give rise to an inference of [guilt]." *In Re Estate of Trogdon*, 330 N.C. 143, 152, 409 S.E.2d 897, 902 (1991). Additionally, plaintiff herself admits, she chose to invoke her Fifth Amendment right so as to not incriminate herself by testifying at trial; and thereby, she "show[ed] no cause why she should not be adjudged in contempt." Therefore, under *Cantwell*,

*supra,* we hold that plaintiff must choose between her right not to incriminate herself in a pending criminal trial and her claim that she cannot be held in civil contempt.

The record is replete with evidence that plaintiff willfully and with stubborn disobedience failed to comply with and knowingly violated the injunction against her. *Sharpe v. Nobles,* 127 N.C. App. at 709-10, 493 S.E.2d at 290-91. Thus, our review of the record reveals that there was competent evidence to support the trial court's holding plaintiff in contempt, and we hold that plaintiff, by her refusal to present testimony, chose to abandon her claim that she was not in contempt of the trial court's order.

We need not address any more of plaintiff's assignments of error since the order from which plaintiff appeals is solely for contempt and abatement.

Having found competent evidence in the record to support the trial court's determination that plaintiff was in contempt of the permanent injunction issued by that court, its judgment is

Affirmed.

Chief Judge EAGLES and Judge TIMMONS-GOODSON concur.