IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-28

 Filed: 6 October 2015

Durham County, No. 14 CVD 3144

STEVEN CRAIG HERNDON, Plaintiff,

 v.

ALISON KINGREY HERNDON, Defendant.

 Appeal by defendant from order entered 10 September 2014 by Judge Doretta

L. Walker in Durham County District Court. Heard in the Court of Appeals 19 May

2015.

 Foil Law Offices, by N. Joanne Foil and Laura E. Windley, for plaintiff-
 appellee.

 Tharrington Smith, LLP, by Jill Schnabel Jackson and Evan B. Horwitz, for
 defendant-appellant.

 DIETZ, Judge.

 This is an appeal from a domestic violence protective order entered against

Alison Herndon upon motion of her husband Steven Herndon. Mr. Herndon alleged

that his wife was putting sleep-inducing drugs in his food and then sneaking out at

night to conduct an affair, often leaving their children home unsupervised.

 When Ms. Herndon’s counsel called her to testify at the hearing, the trial court

stated, “You’re calling her. She ain’t going to get up there and plead no Fifth

Amendment?” Ms. Herndon’s counsel responded that she did not expect Ms. Herndon
 HERNDON V. HERNDON

 Opinion of the Court

to invoke her Fifth Amendment right to remain silent. The trial court then stated, “I

want to make sure that wasn’t going to happen because you -- somebody might be

going to jail then. I just want to let you know. I'm not doing no Fifth Amendment.”

 Ms. Herndon testified on direct examination without invoking her Fifth

Amendment rights. The trial court then stated that there would not be any cross-

examination. Instead, the trial court asked Ms. Herndon questions, many of which

were beyond the scope of Ms. Herndon’s direct examination. In response to those

questions, Ms. Herndon stated variations of “I don’t recall” or “I don’t remember.”

 After ending the questioning, the trial court explained that it found Ms.

Herndon’s testimony “not credible that you don’t remember.” The court then entered

a domestic violence protective order against Ms. Herndon.

 We are constrained to reverse and remand this case. Under long-standing U.S.

Supreme Court precedent, a witness does not automatically waive her Fifth

Amendment rights by voluntarily taking the stand to testify in a civil case. Instead,

the trial court must listen to the witness’s testimony and determine whether the

questions for which the witness invokes the right to remain silent concern “matters

raised by her own testimony on direct examination.” Brown v. United States, 356

U.S. 148, 156 (1958). If so, then the witness has waived her Fifth Amendment rights

as to those questions.

 -2-
 HERNDON V. HERNDON

 Opinion of the Court

 Here, the trial court’s statement that “I’m not doing no Fifth Amendment” and

that if Ms. Herndon attempted to invoke her Fifth Amendment rights “somebody

might be going to jail” violated Ms. Herndon’s Fifth Amendment rights. The threat

to imprison Ms. Herndon if she invoked her right to remain silent may have forced

Ms. Herndon to answer questions differently than she otherwise would have if she

felt free to assert that constitutional right. Accordingly, we must vacate and remand

this case for a new hearing that disregards Ms. Herndon’s previous testimony,

obtained in violation of her Fifth Amendment rights.

 Finally, as explained below, our need to vacate and remand this case on Fifth

Amendment grounds precludes us from reaching the remaining issues raised in this

appeal under the doctrine of constitutional avoidance.

 Facts and Procedural Background

 On 21 May 2014, Plaintiff Steven Herndon filed a complaint and motion for a

domestic violence protective order against his wife, Defendant Alison Herndon. In

his complaint, Plaintiff claimed that Defendant caused or attempted to cause bodily

injury to him and the parties’ four minor children, and that Mr. Herndon lived in fear

of imminent serious bodily injury. Specifically, Mr. Herndon alleged that Ms.

Herndon had drugged his food and drink on at least three occasions, causing him to

pass out and become ill. Mr. Herndon also alleged that, after rendering him

incapacitated, his wife left the couple’s four minor children in the home unsupervised

 -3-
 HERNDON V. HERNDON

 Opinion of the Court

while she visited her lover. Based on these allegations, the trial court entered an ex

parte domestic violence protective order that same day and scheduled a full hearing.

 On 10 September 2014, the trial court held a full hearing. Following Mr.

Herndon’s evidence, Ms. Herndon’s counsel called her to the stand and the following

exchange occurred:

 COUNSEL: Call Alison Herndon.

 THE COURT: All right. Before we do that, let me make a
 statement. You’re calling her. She ain’t going to get up
 there and plead no Fifth Amendment?

 COUNSEL: No, she’s not.

 THE COURT: I want to make sure that wasn’t going to
 happen because you -- somebody might be going to jail
 then. I just want to let you know. I'm not doing no Fifth
 Amendment.

 After defense counsel’s direct examination, the trial court denied Mr.

Herndon’s counsel the right to cross-examination, explaining that “I was going to let

you all ask two questions, but we’re about [out] of time for them now.” The court then

asked Ms. Herndon a series of questions, some of which concerned whether Ms.

Herndon had admitted in text messages that she was drugging her husband. Ms.

Herndon answered many of those questions with variations of “I don’t recall” or “I

don’t remember.”

 After these questions concluded, the trial court announced its ruling. The court

stated that it did not believe Ms. Herndon’s testimony: “I find your limited testimony

 -4-
 HERNDON V. HERNDON

 Opinion of the Court

you did talk about to be not credible that you don’t remember.” The court then made

a series of additional findings and conclusions and later entered a written domestic

violence protective order. Ms. Herndon timely appealed.

 Analysis

 Among the many arguments presented in this appeal, Ms. Herndon contends

that her Fifth Amendment rights were violated when the trial court stated “You’re

calling her. She ain’t going to get up there and plead no Fifth Amendment” and that

“I want to make sure that wasn’t going to happen because you -- somebody might be

going to jail then. I just want to let you know. I'm not doing no Fifth Amendment.”

We agree that these statements violated Ms. Herndon’s Fifth Amendment rights and

require us to vacate and remand this matter for a new hearing that disregards Ms.

Herndon’s previous testimony.

 The Fifth Amendment protects an individual from being compelled to testify

in a way that could incriminate her or subject her to fines, penalties, or forfeiture.

See State v. Pickens, 346 N.C. 628, 637, 488 S.E.2d 162, 166 (1997). To determine

whether the Fifth Amendment privilege applies, the trial court must evaluate

whether, given the implications of the question and the setting in which it was asked,

a real danger of self-incrimination by the witness exists. Id. at 637, 488 S.E.2d at

167. The court can reject a claim of Fifth Amendment privilege only if there is no

possibility of such danger. Id. at 637, 488 S.E.2d at 167.

 -5-
 HERNDON V. HERNDON

 Opinion of the Court

 Importantly, the “privilege against self-incrimination is intended to be a shield

and not a sword.” McKillop v. Onslow County, 139 N.C. App. 53, 63, 532 S.E.2d 594,

601 (2000). As a result, although a witness does not “forego the right to invoke on

cross-examination the privilege against self-incrimination” merely by choosing to

testify willingly in a civil proceeding, that choice is a waiver of the right with regard

to “matters raised by [the witness’s] own testimony on direct examination.” Brown v.

United States, 356 U.S. 148, 154-56 (1958). Indeed, it is hornbook law that “[a] party

to or other witness in a civil proceeding does not waive his privilege merely by taking

the stand.” Testifying in civil proceedings as waiver of privilege against self-

incrimination, 72 A.L.R.2d 830 (2014) (collecting cases). When a witness chooses to

testify, “the privilege is not lost as to matters wholly unrelated to and not connected

with the subject of the direct examination.” Id.

 In Brown, the Supreme Court held that the decision whether to permit

invocation of the Fifth Amendment in a civil proceeding is one that can be made only

after the trial court considers what the witness “said on the stand.” Id. at 157. In

other words, the determination that a witness may not invoke the Fifth Amendment

cannot be made simply because the witness “physically took the stand.” Id.

 That is precisely what happened here. The trial court first sought to confirm

with Ms. Herndon’s counsel that, if Ms. Herndon testified, “[s]he ain’t going to get up

there and plead no Fifth Amendment.” The court then threatened to imprison Ms.

 -6-
 HERNDON V. HERNDON

 Opinion of the Court

Herndon (or her counsel) if Ms. Herndon invoked her Fifth Amendment rights during

her testimony: “I want to make sure that wasn’t going to happen because you --

somebody might be going to jail then. I just want to let you know. I'm not doing no

Fifth Amendment.”

 Under Brown, the trial court’s statements violated Ms. Herndon’s Fifth

Amendment rights. Ms. Herndon was left with the choice of forgoing her right to

testify at a hearing where her liberty was threatened or forgoing her constitutional

right against self-incrimination. It was error for the trial court to place her in that

impossible situation. Moreover, the error was prejudicial and “amounts to the denial

of a substantial right.” N.C. R. Civ. P. 61. Although Ms. Herndon’s direct testimony

did not address her alleged drugging of her husband, the trial court asked her about

text messages that corroborated this allegation. Ms. Herndon responded to these

questions with variations of “I don’t recall” and “I don’t remember.” The trial court

then relied on those answers to determine that Ms. Herndon’s testimony was not

credible. The trial court’s threat to imprison Ms. Herndon if she invoked her Fifth

Amendment rights may have forced Ms. Herndon to answer these questions

differently than she otherwise would have if she felt free to assert that constitutional

right.

 The dissent asserts that Ms. Herndon waived her Fifth Amendment rights

when her counsel indicated that Ms. Herndon did not plan to invoke those rights. But

 -7-
 HERNDON V. HERNDON

 Opinion of the Court

Ms. Herndon’s counsel could not have anticipated that the trial court, on its own

initiative, would ask Ms. Herndon questions well beyond the scope of the direct

testimony. Thus, counsel’s statement that Ms. Herndon would not invoke her Fifth

Amendment rights is more reasonably viewed as addressing the scope of her

testimony on direct.1 And, in any event, a trial court cannot demand that a witness

waive her Fifth Amendment rights in order to testify in her own defense—

particularly in a proceeding like this one, where Ms. Herndon’s fundamental right to

be with her children is at stake. See Jenkins v. Wessel, 780 So. 2d 1006, 1008 (Fla.

Dist. Ct. App. 2001) (discussing the scope of Fifth Amendment waiver for testimony

during a domestic violence protective order hearing).

 The dissent also cites McKillop v. Onslow County, 139 N.C. App. 53, 63, 532

S.E.2d 594, 601 (2000), a case in which this Court found a complete waiver of a party’s

Fifth Amendment rights. But McKillop involved a plaintiff who initiated the legal

proceedings by challenging the constitutionality of an ordinance regulating adult

businesses. This Court held that “if a plaintiff seeks affirmative relief or a defendant

pleads an affirmative defense[,] he should not have it within his power to silence his

own adverse testimony when such testimony is relevant to the cause of action or the

defense.” Id. (emphasis added). Here, by contrast, Ms. Herndon is defending an

action brought against her, seeking a protective order that would prevent her from

 1 Notably, in his Appellee Brief, Mr. Herndon does not contend that this statement constituted
a waiver.

 -8-
 HERNDON V. HERNDON

 Opinion of the Court

contacting her own children. As the Florida District Court of Appeal acknowledged

in Jenkins, a defendant in this circumstance is entitled to invoke the Fifth

Amendment in response to questions beyond the scope of her direct testimony. See

780 So. 2d at 1008.

 Finally, the dissent notes that Ms. Herndon “presents no substantive authority

in support of her argument.” To be sure, there are few citations to legal authority in

this section of Ms. Herndon’s brief, but Ms. Herndon quoted the portion of the hearing

transcript containing the trial court’s challenged statements, asserted a violation of

the Fifth Amendment, and cited both the Fifth Amendment to the U.S. Constitution

and a U.S. Supreme Court case discussing the scope of Fifth Amendment rights. We

believe that is sufficient to satisfy Rule 28(b)(6) of the Rules of Appellate Procedure.

Indeed, Mr. Herndon had no difficulty understanding and responding to this

argument; his Appellee Brief cites and discusses both Brown and McKillop.

 In sum, we hold that the trial court violated Ms. Herndon’s Fifth Amendment

rights. We therefore vacate and remand this case for a new hearing. At that hearing,

the trial court should disregard Ms. Herndon’s testimony from the previous hearing.

If Ms. Herndon chooses to testify at the new hearing, the trial court should assess

 -9-
 HERNDON V. HERNDON

 Opinion of the Court

any invocation of the Fifth Amendment under the test established by the Supreme

Court in Brown.2

 This appeal also raises several other evidentiary issues, one of which involves

an issue of first impression with a constitutional dimension concerning the right to

privacy in the marital relationship. We cannot address those issues. As explained

above, we must vacate and remand this case for a new hearing. At that hearing, the

trial court may not rule the same way on these evidentiary issues, or the parties may

choose to present different evidence and these issues might never arise. Thus, our

discussion of those issues in this opinion would be non-binding dicta, see Trustees of

Rowan Tech. College v. J. Hyatt Hammond Associates, Inc., 313 N.C. 230, 242, 328

S.E.2d 274, 281 (1985), or, worse yet, might be an impermissible advisory opinion,

Kirkman v. Wilson, 328 N.C. 309, 312, 401 S.E.2d 359, 361 (1991). Moreover, with

respect to the issue concerning the right to privacy, addressing it would violate the

long-standing principle that “the courts of this State will avoid constitutional

questions, even if properly presented, where a case may be resolved on other

grounds.” Anderson v. Assimos, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002).

 2 We note that Ms. Herndon’s invocation of her Fifth Amendment rights in response to certain
questions by the court, or counsel on cross-examination, will not impede the court’s ability to find the
truth in a civil hearing. “The finder of fact in a civil cause may use a witness’ invocation of his Fifth
Amendment privilege against self-incrimination to infer that his truthful testimony would have been
unfavorable to him.” McKillop, 139 N.C. App. at 63-64, 532 S.E.2d at 601. Thus, if Ms. Herndon
refuses to answer certain questions based on her Fifth Amendment rights, the trial court may draw
an adverse inference supporting Mr. Herndon’s request for the protective order.

 - 10 -
 HERNDON V. HERNDON

 Opinion of the Court

Accordingly, for the reasons discussed above, we vacate and remand this case based

on the violation of Ms. Herndon’s Fifth Amendment rights, and decline to reach the

remaining issues raised on appeal.

 Conclusion

 For the reasons stated above, we vacate and remand the trial court’s entry of

the domestic violence protective order and remand this matter for further

proceedings.

 VACATED AND REMANDED.

 Judge STEPHENS concurs.

 Judge BRYANT dissents by separate opinion.

 - 11 -
 No. COA15-28 – Herndon v. Herndon

 BRYANT, Judge, dissenting.

 The majority reverses and remands on grounds that the trial court violated

defendant’s Fifth Amendment rights. However, under the circumstances present in

this case, where defendant waived her Fifth Amendment privilege, then took the

stand and testified in her own defense, the trial court’s assertion that defendant

would not be allowed to claim the privilege has no practical and certainly no

prejudicial effect. Because there was no violation of defendant’s Fifth Amendment

rights, I respectfully dissent.

 “No person . . . shall be compelled in any criminal case to be a witness against

himself.” U.S. Const. amend. V. This phrase, commonly known as the privilege

against self-incrimination, is meant to assure individuals that they will not be

compelled to give testimony which will tend to incriminate them or which will tend

to subject them to fines, penalties, or forfeiture. McKillop v. Onslow Cnty., 139 N.C.

App. 53, 62–63, 532 S.E.2d 594, 600 (2000). “However, ‘it is well established that the

privilege protects against real dangers, not remote and speculative possibilities,’ and

a witness may not arbitrarily refuse to testify without existence in fact of a real

danger, it being for the court to determine whether that real danger exists.” Trust

Co. v. Grainger, 42 N.C. App. 337, 339, 256 S.E.2d 500, 502 (1979) (emphasis added)

(quoting Zicarelli v. Investigation Comm’n, 406 U.S. 472, 478, 32 L. Ed. 2d 234, 240

(1972)).
 HERNDON V HERNDON

 BRYANT, J., dissenting

 At the outset, it should be noted that defendant has failed to argue any case

law in support of her argument, citing only to Malloy v. Hogan, 378 U.S. 1, 12 L. Ed.

2d 653 (1964), for the proposition that the Fifth Amendment right against compulsory

self-incrimination is applicable to the states through the Fourteenth Amendment. As

defendant presents no substantive authority in support of her argument, our Rules

of Appellate Procedure normally require that defendant’s argument be dismissed.

See N.C. R. App. P. 28(b)(6) (2015) (“Issues not presented in a party’s brief, or in

support of which no reason or argument is stated, will be taken as abandoned.”).

However, the majority chooses to address the Fifth Amendment issue as its sole

reason for reversing the trial court; I therefore address the issue in dissent.

 Here, a review of the record fails to demonstrate a violation of defendant’s

constitutional right against self-incrimination. The transcript of the hearing

indicates that defendant and her paramour were both hostile witnesses. Defendant’s

paramour was called as a witness by plaintiff. On direct examation, defendant’s

paramour consistently refused to answer questions posed by plaintiff. Instead, he

repeatedly asserted his Fifth Amendment right against compulsory self-

incrimination in lieu of answering the questions posed. 3 With the exception of

questions regarding communications between defendant and her paramour regarding

 3 According to the record, plaintiff attempted to depose defendant’s paramour prior to trial,
but defendant’s paramour refused to testify under oath or remain for the deposition. Later, Judge
David Q. LeBarre found defendant’s paramour to be willfully not in compliance with a subpoena of the
Durham County District Court.

 2
 HERNDON V HERNDON

 BRYANT, J., dissenting

defendant’s children (which the court found did not expose defendant’s paramour to

criminal culpability), there is nothing in the record to indicate that the paramour was

compelled to answer questions once he asserted his Fifth Amendment right.

 THE COURT: I understand why you are not answering the
 other questions and nobody is asking you to . . . .

In fact, following its order compelling testimony regarding communications about

defendant’s children, the trial court informed the witness that the scope of her order

compelling his testimony was limited to the testimony about those communications.

 After plaintiff rested his case, defendant put on her direct case. Defendant

called a neighbor of plaintiff and defendant as a witness, whose testimony on direct

and cross-examination was in response to many questions regarding plaintiff and

defendant, their children, and many aspects of the parties’ lives. Defense counsel

then called defendant as a witness. As defendant was about to take the stand on her

own behalf, the following occurred:

 THE COURT: Thank you. Come on down. Call your next
 witness.

 [Defense counsel]: Call Alison Herndon.

 THE COURT: All right. Before we do that, let me make a
 statement. You're calling her. She ain't going to get up
 there and plead no Fifth Amendment?

 [Defense counsel]: No, she's not.

 THE COURT: I want to make sure that wasn't going to
 happen because you -- somebody might be going to jail

 3
 HERNDON V HERNDON

 BRYANT, J., dissenting

 then. I just want to let you know. I'm not doing no Fifth
 Amendment.

 [Defense counsel]: No.

 THE COURT: Okay. Call your witness.

 [Defense counsel]: Alison Herndon.

(emphasis added). The majority holds that this statement by the trial court

constituted a violation of defendant’s constitutional right against self-incrimination,

because “[this] threat to [defendant] . . . may have forced [her] to answer questions

differently than she otherwise would have if she felt free to assert that constitutional

right.” (emphasis added). I strongly disagree with the majority’s holding and its

reasoning.

 To the trial court’s question, “You’re calling her. She ain’t going to get up there

and plead no Fifth Amendment?” defendant’s counsel responded, “No she’s not.”

Defendant’s counsel made no further response or objection to the trial court’s

statement. Defendant testified at length regarding matters before the court, and

never asserted or attempted to assert a Fifth Amendment privilege, nor did defendant

make a proffer that her testimony was in anyway compromised, that she felt

threatened or forced to answer questions differently based on the trial court’s

comments. As such, the factual basis upon which the majority bases its opinion, is

unsupported. There is nothing in the record or transcript to permit the majority’s

finding that defendant’s Fifth Amendment right against self-incrimination was

 4
 HERNDON V HERNDON

 BRYANT, J., dissenting

violated. In fact, counsel’s response that defendant would not plead the Fifth, could,

I submit, be considered a waiver of the privilege. Further, it is clear that defendant

could have refused to testify upon hearing the trial court’s additional statement that

“somebody might be going to jail”; instead, defendant proceeded to testify.

 [W]hen a witness voluntarily testifies, the privilege
 against self-incrimination is amply respected without need
 of accepting testimony freed from the antiseptic test of the
 adversary process. The witness himself, certainly if he is a
 party, determines the area of disclosure and therefore of
 inquiry. Such a witness has the choice, after weighing the
 advantage of the privilege against self-incrimination
 against the advantage of putting forward his version of the
 facts and his reliability as a witness, not to testify at all. He
 cannot reasonably claim that the Fifth Amendment gives
 him not only this choice but, if he elects to testify, an
 immunity from cross-examination on the matters he has
 himself put in dispute. It would make of the Fifth
 Amendment not only a humane safeguard against
 judicially coerced self-disclosure but a positive invitation to
 mutilate the truth a party offers to tell.

Brown v. United States, 356 U.S. 148, 155–56, 2 L. Ed. 2d 589, 597 (1958) (emphasis

added). While the majority cites Brown in support of its holding that a Fifth

Amendment violation occurred, I do not read Brown as supporting the overly

technical application made by the majority. The majority states that Brown holds

“the decision whether to permit invocation of the Fifth Amendment in a civil

proceeding is one that can be made only after the trial court considers what the

witness ‘said on the stand.’ ” And a “determination that a witness may not invoke

the Fifth Amendment cannot be made simply because the witness ‘physically took the

 5
 HERNDON V HERNDON

 BRYANT, J., dissenting

stand.’ ” Viewing the facts as interpreted by the majority, even if the trial court’s

actions did not follow the procedure the majority seems to think is required before a

ruling on privilege, I am unaware of any cases that would consider these facts to

constitute a Fifth Amendment violation and support a reversal of this case.

 I disagree with the majority’s assertion that Brown is an indication of “long-

standing U.S. Supreme Court precedent” that “a witness does not waive her Fifth

Amendment rights by voluntarily taking the stand to testify in a civil case.” Brown

resulted from a civil contempt proceeding during which the defendant was held in

contempt for failure to answer certain questions on cross-examination. The United

States Supreme Court held that where the defendant took the stand voluntarily and

testified on her own behalf, she could not invoke the privilege against self-

incrimination as to relevant matters, and affirmed the lower court’s contempt ruling.

See McKillop, 139 N.C. App. at 64–65, 532 S.E.2d at 601 (“[U]nder [Cantwell v.

Cantwell, 109 N.C. App. 395, 427 S.E.2d 129 (1993)], we hold that [the] plaintiff must

choose between her right not to incriminate herself in a pending criminal trial and

her claim that she cannot be held in civil contempt.”).

 In McKillop, this Court addressed Brown and discussed how, even when a

party invokes the Fifth Amendment, the trial court has a duty to weigh the rights of

the litigants and ensure that there is due process and a fair trial:

 While we recognize that the defendant in the
 present case had the right to invoke her privilege

 6
 HERNDON V HERNDON

 BRYANT, J., dissenting

 against self-incrimination, "the interests of the other
 party and regard for the function of courts of justice
 to ascertain the truth become relevant, and prevail
 in the balance of considerations determining the
 scope and limits of the privilege . . . ." Brown v.
 United States, 356 U.S. 148, 156, 2 L. Ed. 2d 589,
 597, reh'g denied, 356 U.S. 948, 2 L. Ed. 2d 822
 (1958) (a party witness in a criminal case cannot
 present testimony on direct examination and then
 invoke the privilege on cross-examination); see also
 Pulawski v. Pulawski, 463 A.2d 151, 157 (R.I. 1983)
 (as between private litigants, the privilege against
 self-incrimination must be weighed against the right
 of the other party to due process and a fair trial). The
 privilege against self-incrimination is intended to be
 a shield and not a sword. Pulawski, 463 A.2d at 157;
 Christenson v. Christenson, 162 N.W.2d 194, 200
 (Minn. 1968). Therefore, "if a plaintiff seeks
 affirmative relief or a defendant pleads an
 affirmative defense[,] he should not have it within
 his power to silence his own adverse testimony when
 such testimony is relevant to the cause of action or
 the defense." Christenson, 162 N.W.2d at 200
 (citation omitted).

[Cantwell, 109 N.C. App. at 397, 427 S.E.2d at 130–31].
Finding Christenson persuasive and instructive, this Court
held "a party has a right to seek affirmative relief in the
courts, but if in the course of her action she is faced with
the prospect of answering questions which might tend to
incriminate her, she must either answer those questions or
abandon her claim." Id. at 398, 427 S.E.2d at 131.

Furthermore, it is well established that North Carolina law
allows the trier of fact to infer guilt on a civil defendant
who, having the opportunity to refute damaging evidence
against her, chooses not to. The finder of fact in a civil cause
may use a witness' invocation of his Fifth Amendment
privilege against self-incrimination to infer that his
truthful testimony would have been unfavorable to him.

 7
 HERNDON V HERNDON

 BRYANT, J., dissenting

 Fedoronko v. American Defender Life Ins. Co., 69 N.C. App.
 655, 657–58, 318 S.E.2d 244, 246 (1984).

McKillop, 139 N.C. App. at 63–64 , 532 S.E.2d at 600–01.

 [S]ince the power of the court over a witness in requiring
 proper responses is inherent and necessary for the
 furtherance of justice, it must be conceded that testimony
 which is obviously false or evasive is equivalent to a refusal
 to testify within the intent and meaning of the foregoing
 statutes, and therefore punishable [by contempt].

Galyon v. Stutts, 241 N.C. 120, 124, 84 S.E.2d 822, 825 (1954).

 In the instant case, the trial court understood that the purpose of the DVPO

hearing was to determine whether sufficient credible evidence existed to support

plaintiff’s claim that his wife was putting drugs in his food and sneaking out of the

house to have an affair with her paramour. The trial court had already heard the

paramour take the Fifth Amendment upon being asked a number of questions

regarding his relationship with defendant and whether she had shared certain

information with him regarding what she may have been doing to her husband.

However, unlike Defendant, the paramour was compelled to testify. See Brown, 356

U.S. at 155, 2 L. Ed. 2d at 597 (“A witness who is compelled to testify . . . has no

occasion to invoke the privilege against self-incrimination until testimony sought to

be elicited will in fact tend to incriminate.”)

 And while defendant had the right to meet the evidence presented against her

by plaintiff with evidence of her own, defendant was not compelled to testify on her

 8
 HERNDON V HERNDON

 BRYANT, J., dissenting

own behalf. She did so voluntarily. Based on the initial question and response just

prior to her testimony, defendant could be said to have waived the privilege.

However, it was within the inherent power of the trial court to ascertain from

defendant that she chose to testify voluntarily and waive her privilege against self-

incrimination. Further, the trial court’s statement was sufficient to put defendant on

notice that if she intended to testify, the trial court expected defendant to answer

questions truthfully. Notwithstanding the less than artful phraseology, it was

ultimately up to the court to determine the scope of the privilege. See id. at 156, 2 L.

Ed. 2d at 597 (“The interests of the other party and regard for the function of courts

of justice to ascertain the truth become relevant, and prevail in the balance of

considerations determining the scope and limits of the privilege against self-

incrimination.”).

 Upon hearing the trial court’s statement of warning, defendant could have

refused to testify, she was not compelled to do so. Instead, she took the stand and

testified. The court did not allow plaintiff to cross-examine defendant, but the trial

court asked questions of her. Throughout, defendant made no objection to the trial

court’s admonition and never asserted the privilege against self-incrimination.

Moreover, defendant does not claim and the record does not support that she

incriminated herself, or that she testified differently because of the trial court’s

comments. There is no indication from these facts that defendant’s Fifth Amendment

 9
 HERNDON V HERNDON

 BRYANT, J., dissenting

rights were violated. Further, neither Brown, McKillop, nor any other case I have

found would support a holding that defendant’s Fifth Amendment right against self-

incrimination was violated in this case.

 If allowed to stand, the majority opinion would grant a defendant the right to

use a constitutional privilege, intended as a shield to protect a litigant, to be used as

a sword to strike down the inherent authority of the court to oversee the proper

conduct of trials. Accordingly, as I see no facts or law as espoused by the majority

that amount to a violation of defendant’s constitutional right against self-

incrimination, I respectfully dissent.

 10