BRYANT, Judge, dissenting.
The majority reverses and remands on grounds that the trial court violated defendant's Fifth Amendment rights. However, under the circumstances present in this case, where defendant waived her Fifth Amendment privilege, then took the stand and testified in her own defense, the trial court's assertion that defendant would not be allowed to claim the privilege has no practical and certainly no prejudicial effect. Because there was no violation of defendant's Fifth Amendment rights, I respectfully dissent.
"No person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This phrase, commonly known as the privilege against self-incrimination, is meant to assure individuals that they will not be compelled to give testimony which will tend to incriminate them or which will tend to subject them to fines, penalties, or forfeiture. McKillop v. Onslow Cnty., 139 N.C.App. 53, 62-63, 532 S.E.2d 594, 600 (2000). "However, 'it is well established that the privilege protects against real dangers, not remote and speculative possibilities, ' and a witness may not arbitrarily refuse to testify without existence in fact of a real danger, it being for the court to determine whether that real danger exists." Trust Co. v. Grainger, 42 N.C.App. 337, 339, 256 S.E.2d 500, 502 (1979) (emphasis added) (quoting Zicarelli v. Investigation Comm'n, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234, 240 (1972) ).
At the outset, it should be noted that defendant has failed to argue any case law in support of her argument, citing only to Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), for the proposition that the Fifth Amendment right against compulsory self-incrimination is applicable to the states through the Fourteenth Amendment. As defendant presents no substantive authority in support of her argument, our Rules of Appellate Procedure normally require that defendant's argument be dismissed. See N.C. R.App. P. 28(b)(6) (2015) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). However, the majority chooses to address the Fifth Amendment issue as its sole reason for reversing the trial court; I therefore address the issue in dissent.
*296 Here, a review of the record fails to demonstrate a violation of defendant's constitutional right against self-incrimination. The transcript of the hearing indicates that defendant and her paramour were both hostile witnesses. Defendant's paramour was called as a witness by plaintiff. On direct examination, defendant's paramour consistently *147 refused to answer questions posed by plaintiff. Instead, he repeatedly asserted his Fifth Amendment right against compulsory self-incrimination in lieu of answering the questions posed.[3] With the exception of questions regarding communications between defendant and her paramour regarding defendant's children (which the court found did not expose defendant's paramour to criminal culpability), there is nothing in the record to indicate that the paramour was compelled to answer questions once he asserted his Fifth Amendment right.
THE COURT: I understand why you are not answering the other questions and nobody is asking you to....
In fact, following its order compelling testimony regarding communications about defendant's children, the trial court informed the witness that the scope of her order compelling his testimony was limited to the testimony about those communications.
After plaintiff rested his case, defendant put on her direct case. Defendant called a neighbor of plaintiff and defendant as a witness, whose testimony on direct and cross-examination was in response to many questions regarding plaintiff and defendant, their children, and many aspects of the parties' lives. Defense counsel then called defendant as a witness. As defendant was about to take the stand on her own behalf, the following occurred:
THE COURT: Thank you. Come on down. Call your next witness.
[Defense counsel]: Call Alison Herndon.
THE COURT: All right. Before we do that, let me make a statement. You're calling her. She ain't going to get up there and plead no Fifth Amendment?
[Defense counsel]: No, she's not.
*297 THE COURT: I want to make sure that wasn't going to happen because you-somebody might be going to jail then. I just want to let you know. I'm not doing no Fifth Amendment.
[Defense counsel]: No.
THE COURT: Okay. Call your witness.
[Defense counsel]: Alison Herndon.
(emphasis added). The majority holds that this statement by the trial court constituted a violation of defendant's constitutional right against self-incrimination, because "[this] threat to [defendant] ... may have forced [her] to answer questions differently than she otherwise would have if she felt free to assert that constitutional right." (emphasis added). I strongly disagree with the majority's holding and its reasoning.
To the trial court's question, "You're calling her. She ain't going to get up there and plead no Fifth Amendment?" defendant's counsel responded, "No she's not." Defendant's counsel made no further response or objection to the trial court's statement. Defendant testified at length regarding matters before the court, and never asserted or attempted to assert a Fifth Amendment privilege, nor did defendant make a proffer that her testimony was in anyway compromised, that she felt threatened or forced to answer questions differently based on the trial court's comments. As such, the factual basis upon which the majority bases its opinion, is unsupported. There is nothing in the record or transcript to permit the majority's finding that defendant's Fifth Amendment right against self-incrimination was violated. In fact, counsel's response that defendant would not plead the Fifth, could, I submit, be considered a waiver of the privilege. Further, it is clear that defendant could have refused to testify upon hearing the trial court's additional statement that "somebody might be going to jail"; instead, defendant proceeded to testify.
[W]hen a witness voluntarily testifies, the privilege against self-incrimination is amply respected without need of accepting testimony freed from the antiseptic test of the adversary process. The witness himself, certainly if he is a party, determines the area of disclosure and therefore of inquiry. Such a witness has the choice, after weighing the advantage of the privilege *148 against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a *298 witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell.
Brown v. United States, 356 U.S. 148, 155-56, 78 S.Ct. 622, 626, 2 L.Ed.2d 589, 597 (1958) (emphasis added). While the majority cites Brown in support of its holding that a Fifth Amendment violation occurred, I do not read Brown as supporting the overly technical application made by the majority. The majority states that Brown holds "the decision whether to permit invocation of the Fifth Amendment in a civil proceeding is one that can be made only after the trial court considers what the witness 'said on the stand.' " And a "determination that a witness may not invoke the Fifth Amendment cannot be made simply because the witness 'physically took the stand.' " Viewing the facts as interpreted by the majority, even if the trial court's actions did not follow the procedure the majority seems to think is required before a ruling on privilege, I am unaware of any cases that would consider these facts to constitute a Fifth Amendment violation and support a reversal of this case.
I disagree with the majority's assertion that Brown is an indication of "longstanding U.S. Supreme Court precedent" that "a witness does not waive her Fifth Amendment rights by voluntarily taking the stand to testify in a civil case." Brown resulted from a civil contempt proceeding during which the defendant was held in contempt for failure to answer certain questions on cross-examination. The United States Supreme Court held that where the defendant took the stand voluntarily and testified on her own behalf, she could not invoke the privilege against self-incrimination as to relevant matters, and affirmed the lower court's contempt ruling. See McKillop, 139 N.C.App. at 64-65, 532 S.E.2d at 601 ("[U]nder [ Cantwell v. Cantwell, 109 N.C.App. 395, 427 S.E.2d 129 (1993) ], we hold that [the] plaintiff must choose between her right not to incriminate herself in a pending criminal trial and her claim that she cannot be held in civil contempt.").
In McKillop, this Court addressed Brown and discussed how, even when a party invokes the Fifth Amendment, the trial court has a duty to weigh the rights of the litigants and ensure that there is due process and a fair trial:
*299 While we recognize that the defendant in the present case had the right to invoke her privilege against self-incrimination, "the interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege...." Brown v. United States, 356 U.S. 148, 156 [78 S.Ct. 622, 627] 2 L.Ed.2d 589, 597, reh'g denied, 356 U.S. 948 [78 S.Ct. 776] 2 L.Ed.2d 822 (1958) (a party witness in a criminal case cannot present testimony on direct examination and then invoke the privilege on cross-examination); see also Pulawski v. Pulawski, 463 A.2d 151, 157 (R.I.1983) (as between private litigants, the privilege against self-incrimination must be weighed against the right of the other party to due process and a fair trial). The privilege against self-incrimination is intended to be a shield and not a sword. Pulawski, 463 A.2d at 157 ; Christenson v. Christenson [281 Minn. 507] 162 N.W.2d 194, 200 (Minn.1968). Therefore, "if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense[,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense." Christenson, 162 N.W.2d at 200 (citation omitted).
[ Cantwell, 109 N.C.App. at 397, 427 S.E.2d at 130-31 ]. Finding Christenson persuasive and instructive, this Court held "a party has a right to seek affirmative relief in the courts, but if in the course of her action she is faced with the prospect of *149 answering questions which might tend to incriminate her, she must either answer those questions or abandon her claim." Id. at 398, 427 S.E.2d at 131.
Furthermore, it is well established that North Carolina law allows the trier of fact to infer guilt on a civil defendant who, having the opportunity to refute damaging evidence against her, chooses not to. The finder of fact in a civil cause may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable *300 to him.
Fedoronko v. American Defender Life Ins. Co., 69 N.C.App. 655, 657-58, 318 S.E.2d 244, 246 (1984).
McKillop, 139 N.C.App. at 63-64, 532 S.E.2d at 600-01.
[S]ince the power of the court over a witness in requiring proper responses is inherent and necessary for the furtherance of justice, it must be conceded that testimony which is obviously false or evasive is equivalent to a refusal to testify within the intent and meaning of the foregoing statutes, and therefore punishable [by contempt].
Galyon v. Stutts, 241 N.C. 120, 124, 84 S.E.2d 822, 825 (1954).
In the instant case, the trial court understood that the purpose of the DVPO hearing was to determine whether sufficient credible evidence existed to support plaintiff's claim that his wife was putting drugs in his food and sneaking out of the house to have an affair with her paramour. The trial court had already heard the paramour take the Fifth Amendment upon being asked a number of questions regarding his relationship with defendant and whether she had shared certain information with him regarding what she may have been doing to her husband. However, unlike Defendant, the paramour was compelled to testify. See Brown, 356 U.S. at 155, 78 S.Ct. at 627, 2 L.Ed.2d at 597 ("A witness who is compelled to testify ... has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate.")
And while defendant had the right to meet the evidence presented against her by plaintiff with evidence of her own, defendant was not compelled to testify on her own behalf. She did so voluntarily. Based on the initial question and response just prior to her testimony, defendant could be said to have waived the privilege. However, it was within the inherent power of the trial court to ascertain from defendant that she chose to testify voluntarily and waive her privilege against self-incrimination. Further, the trial court's statement was sufficient to put defendant on notice that if she intended to testify, the trial court expected defendant to answer questions truthfully. Notwithstanding the less than artful phraseology, it was ultimately up to the court to determine the scope of the privilege. See id. at 156, 78 S.Ct. at 627, 2 L.Ed.2d at 597 ("The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.").
*301 Upon hearing the trial court's statement of warning, defendant could have refused to testify, she was not compelled to do so. Instead, she took the stand and testified. The court did not allow plaintiff to cross-examine defendant, but the trial court asked questions of her. Throughout, defendant made no objection to the trial court's admonition and never asserted the privilege against self-incrimination. Moreover, defendant does not claim and the record does not support that she incriminated herself, or that she testified differently because of the trial court's comments. There is no indication from these facts that defendant's Fifth Amendment rights were violated. Further, neither Brown, McKillop , nor any other case I have found would support a holding that defendant's Fifth Amendment right against self-incrimination was violated in this case.
If allowed to stand, the majority opinion would grant a defendant the right to use a constitutional privilege, intended as a shield to protect a litigant, to be used as a sword to strike down the inherent authority of the court to oversee the proper conduct of trials. Accordingly, as I see no facts or law as *150 espoused by the majority that amount to a violation of defendant's constitutional right against self-incrimination, I respectfully dissent.

According to the record, plaintiff attempted to depose defendant's paramour prior to trial, but defendant's paramour refused to testify under oath or remain for the deposition. Later, Judge David Q. LeBarre found defendant's paramour to be willfully not in compliance with a subpoena of the Durham County District Court.