780 So.2d 1006 (2001)
Carl JENKINS, Appellant,
v.
The Honorable John D. WESSEL, Judge of the Circuit Court, and Julie Cloud, Appellees.
No. 4D00-2266.
District Court of Appeal of Florida, Fourth District.
March 28, 2001.
Douglas Duncan of Roth & Duncan, P.A., West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for Appellee-The Honorable John D. Wessel, Judge of the Circuit Court.
GROSS, J.
Carl Jenkins appeals his conviction for direct criminal contempt for refusing to answer questions posed to him in a hearing concerning an injunction for protection against repeat violence. See § 784.046, Fla. Stat. (2000). We reverse the conviction, *1007 holding that Jenkins properly invoked his privilege against selfincrimination secured by the Fifth Amendment of the United States Constitution.
This proceeding began when Julie Cloud filed a petition for injunction for protection against repeat violence. Cloud alleged that on April 24, 2000, her neighbor, Carl Jenkins, sexually assaulted her in her home. Based on the sworn petition, the trial court entered an ex parte temporary injunction on April 28, 2000. The judge extended the temporary injunction on May 11, 2000.
On June 1, 2000, the court held an evidentiary hearing regarding the entry of a permanent injunction under section 784.046(7). Cloud described the circumstances of the April 24 sexual assault. She did not report the incident to the police until April 26. On that day, Cloud's two sisters were at her home when a police officer arrived. The officer wanted to obtain the tag number from Jenkins's vehicle. The officer and one of Cloud's sisters used the sister's car to drive by Jenkins's home. At that time, Jenkins was standing outside, staring at the officer and Cloud's sister.
Next, Jenkins testified at the hearing. His lawyer told the court that he was calling Jenkins for the sole purpose of testifying to the events of April 26. Jenkins said that on the evening of April 26, he was standing in his driveway talking with his brother-in-law, when he noticed a car approach his house three times. He found this to be unusual; people in the car "kept staring" and the car was "going at a slow pace." Jenkins was concerned because there had been thefts in the neighborhood. Walking on the sidewalk, Jenkins followed the car. When he saw the police car, he "turned around and came back to [his] driveway."
After a few questions concerning the events of April 26, Cloud began to question Jenkins about what occurred on April 24, the night of the sexual assault. On the advice of counsel, Jenkins refused to answer all such questions, invoking his Fifth Amendment right against self-incrimination. The trial judge ruled that Jenkins had waived his Fifth Amendment right and ordered Jenkins to answer questions about April 24. Jenkins refused.
At the conclusion of the June 1 hearing, the court entered a final judgment of injunction for protection against repeat violence.
After a contempt hearing on June 21, 2000, the trial judge found Jenkins in criminal contempt and sentenced him to ninety days in jail, with forty-five days suspended, and credit for one day of time served. On October 17, 2000, the trial judge granted Jenkins's motion to purge the sentence but denied his motion to vacate the conviction.
The Fifth Amendment to the United States Constitution provides in pertinent part that no person "shall be compelled in any criminal case to be a witness against himself[.]" This protection exists primarily to "assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." Maness v. Meyers, 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). One aspect of the privilege against self-incrimination is the right of a witness in a civil proceeding to refuse to respond to a question on the grounds that his answer may tend to incriminate him. See Kastigar v. United States, 406 U.S. 441, 444-45, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); DeLisi v. Bankers Ins. Co., 436 So.2d 1099, 1101 (Fla. 4th DCA 1983) (quoting Delisi v. Smith, 423 So.2d 934, 935 (Fla. 2d DCA 1982) (citing MCCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 116(c) (2d ed.1972))).
At the June 1 hearing, Jenkins properly asserted a Fifth Amendment claim, since the April 24 incident was under investigation by the Delray Beach Police Department and the Palm Beach County State Attorney's Office. Jenkins faced a substantial and real hazard of incrimination, *1008 not a "merely trifling or imaginary" one. Landeverde v. State, 769 So.2d 457, 461 (Fla. 4th DCA 2000) (quoting Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968)); see St. George v. State, 564 So.2d 152, 155 (Fla. 5th DCA 1990) (stating that for an individual to invoke privilege against self-incrimination, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result" (citations omitted)).
Jenkins did not waive his Fifth Amendment right as to the April 24 incident. "[B]ecause the right to be free from self-incrimination is a fundamental principle secured by the Fifth Amendment, waiver of the privilege will not be lightly inferred, and courts will generally indulge every reasonable presumption against finding a waiver." State v. Spiegel, 710 So.2d 13, 16 (Fla. 3d DCA 1998) (citation omitted). A witness waives the Fifth Amendment privilege against self-incrimination "only as to matters relevant to issues raised by [the witness's] testimony on direct examination." Johnson v. State, 509 So.2d 373, 373 (Fla. 4th DCA 1987); see CHARLES W. EHRHARDT, FLORIDA EVIDENCE § 612.2 (2000 ed.).
For example, in Gamez v. State, 643 So.2d 1105, 1106 (Fla. 4th DCA 1994), a witness for a criminal defendant testified during a proffer on matters relevant to the defense. During the state's cross-examination, the witness invoked his Fifth Amendment privilege, so the trial court did not allow the witness to testify. We held that it was error to exclude the witness's testimony; the witness properly invoked the Fifth Amendment privilege since the state's questions "went beyond the matters covered" in the direct examination. Id.; see Calloway v. Wainwright, 409 F.2d 59, 66 (5th Cir.1968) (holding where witness took stand for sole purpose of testifying about the voluntariness of his confession, witness had not completely waived privilege against self-incrimination as to the merits of his case).
In this civil case for an injunction, during a brief direct examination, Jenkins testified to the events of April 26, without challenging Cloud's version of the events on April 24. No portion of Jenkins's testimony even touched on the April 24 sexual assault.
The sole purpose of Jenkins's testimony was to show that there was no incident of repeat violence on April 26, so that there was no basis for an injunction under section 784.046. Cloud's attempt to cross-examine Jenkins about the events of April 24 went beyond the subject matter of the direct examination. See § 90.612(2), Fla. Stat. (2000). Nothing in the proposed cross-examination could have modified, supplemented, contradicted, rebutted, or made clearer the facts Jenkins recounted in direct examination. See Coxwell v. State, 361 So.2d 148, 151 (Fla.1978). The proposed cross-examination did not relate to any of the methods of impeachment described in sections 90.608 and 90.610, Florida Statutes (2000). Under these circumstances, Jenkins did not waive his Fifth Amendment privilege as to the events of April 24.
We distinguish this case from a situation where a criminal defendant takes the stand at trial and waives his or her privilege against self-incrimination as to matters that are reasonably related to the subject matter of his or her direct examination. For example, in Neely v. Israel, 715 F.2d 1261, 1263-64 (7th Cir.1983), a defendant's testimony on direct examination in a first degree murder trial could have been understood as a denial of any connection with the gang involved in the robbery/assault several days before the murder. Because this testimony put the defendant's relationship with the gang in issue, the prosecutor's subsequent cross-examination of the defendant regarding the prior robbery/assault did not violate defendant's right against self-incrimination, *1009 notwithstanding defendant's attempt to limit his testimony to the day of the murder.[1]
Finally, this was not a case where Jenkins could have been required to comply with the trial court's order to answer questions, even though the order was in error. In St. George, the state argued that even if the defendant had the constitutional right to remain silent, the trial court properly found him guilty of direct criminal contempt because the defendant had the duty to comply with the trial court's order to answer questions. The fifth district rejected that argument:
An aggrieved party's failure to comply with the terms of an order issued by a court acting with proper jurisdiction may normally be punished by contempt even if the order is, on appeal, found to be erroneousthe rationale being that the order must be obeyed until vacated or modified by that court or until the order has been reversed on appeal, no matter how unreasonable and unjust the order may be. The stated reason behind this rule is that the need for such compliance outweighs any detriment to the party who may be temporarily affected by the order since the injury arising from an erroneous ruling in the lower court is usually not irreparable. However, a party's failure to comply with an erroneous order compelling the disclosure of information is not subject to contempt when such compliance would result in irreparable injury:

Compliance could cause irreparable injury because appellate courts cannot always "unring the bell" once the information has been released. Subsequent appellate vindication does not necessarily have its ordinary consequence of totally repairing the error.
Had defendant complied with the trial court's order compelling him to disclose information concerning his identification, he would have suffered irreparable injury.
564 So.2d at 155-56 (emphasis supplied) (citations omitted).
For these reasons, we hold that Jenkins properly asserted his Fifth Amendment right at the June 1 hearing. The trial court was therefore without the power to compel his answers through the contempt sanction. Jenkins's conviction for criminal contempt is reversed.
On the remaining issue, the trial court erred in entering a permanent injunction, since there was no proof of "repeat violence" within the meaning of section 784.046(1)(b), Florida Statutes (2000). There was no incident of violence other than the one that occurred on April 24. The events of April 26 do not constitute "violence" as defined by section 784.046(1)(a); there was no stalking as the term is used in section 784.048, Florida Statutes (2000). We therefore reverse the order granting the injunction.
WARNER, C.J., and HAZOURI, J., concur.
NOTES
[1] We also find this case distinguishable from cases where the subject of cross-examination is relevant to the issue of intent to commit the crime for which the defendant is charged. See United States v. Beechum, 582 F.2d 898, 906-08 (5th Cir.1978) (finding where defendant, a substitute mail carrier, was tried for unlawful possession of silver dollar stolen from the mail and testified that he came upon the coin innocently and intended to give it to the proper authority, evidence that defendant wrongfully possessed credit cards of two other people at the time of his arrest was relevant to issue of intent and was within scope of cross-examination even though defendant did not refer to credit cards on direct). See generally 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6166 (1993) (discussing federal authority regarding cross-examination of an accused who asserts the privilege against self-incrimination); Note, Testimonial Waiver of the Privilege Against Self-Incrimination, 92 HARV. L.REV. 1752 (1979) (focusing on testimonial waiver of the Fifth Amendment privilege against self-incrimination).