DIETZ, Judge.
*289 This is an appeal from a domestic violence protective order entered against Alison Herndon upon motion of her husband Steven Herndon. Mr. Herndon alleged that his wife was putting sleep-inducing drugs in his food and then sneaking out at night to conduct an affair, often leaving their children home unsupervised.
When Ms. Herndon's counsel called her to testify at the hearing, the trial court stated, "You're calling her. She ain't going to get up there and plead no Fifth Amendment?" Ms. Herndon's counsel responded that she did not expect Ms. Herndon to invoke her Fifth Amendment right to remain silent. The trial court then stated, "I want to make sure that wasn't going to happen because you-somebody might be going to jail then.
*143 I just want to let you know. I'm not doing no Fifth Amendment."
Ms. Herndon testified on direct examination without invoking her Fifth Amendment rights. The trial court then stated that there would not be any cross-examination. Instead, the trial court asked Ms. Herndon questions, many of which were beyond the scope of Ms. Herndon's direct examination. In response to those questions, Ms. Herndon stated variations of "I don't recall" or "I don't remember."
After ending the questioning, the trial court explained that it found Ms. Herndon's testimony "not credible that you don't remember." The court then entered a domestic violence protective order against Ms. Herndon.
We are constrained to reverse and remand this case. Under long-standing U.S. Supreme Court precedent, a witness does not automatically waive her Fifth Amendment rights by voluntarily taking the stand to testify in a civil case. Instead, the trial court must listen to the witness's testimony and determine whether the questions for which the witness invokes the right to remain silent concern "matters raised by her own testimony on direct examination." Brown v. United States, 356 U.S. 148, 156, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). If so, then the witness has waived her Fifth Amendment rights as to those questions.
*290 Here, the trial court's statement that "I'm not doing no Fifth Amendment" and that if Ms. Herndon attempted to invoke her Fifth Amendment rights "somebody might be going to jail" violated Ms. Herndon's Fifth Amendment rights. The threat to imprison Ms. Herndon if she invoked her right to remain silent may have forced Ms. Herndon to answer questions differently than she otherwise would have if she felt free to assert that constitutional right. Accordingly, we must vacate and remand this case for a new hearing that disregards Ms. Herndon's previous testimony, obtained in violation of her Fifth Amendment rights.
Finally, as explained below, our need to vacate and remand this case on Fifth Amendment grounds precludes us from reaching the remaining issues raised in this appeal under the doctrine of constitutional avoidance.
Facts and Procedural Background
On 21 May 2014, Plaintiff Steven Herndon filed a complaint and motion for a domestic violence protective order against his wife, Defendant Alison Herndon. In his complaint, Plaintiff claimed that Defendant caused or attempted to cause bodily injury to him and the parties' four minor children, and that Mr. Herndon lived in fear of imminent serious bodily injury. Specifically, Mr. Herndon alleged that Ms. Herndon had drugged his food and drink on at least three occasions, causing him to pass out and become ill. Mr. Herndon also alleged that, after rendering him incapacitated, his wife left the couple's four minor children in the home unsupervised while she visited her lover. Based on these allegations, the trial court entered an ex parte domestic violence protective order that same day and scheduled a full hearing.
On 10 September 2014, the trial court held a full hearing. Following Mr. Herndon's evidence, Ms. Herndon's counsel called her to the stand and the following exchange occurred:
COUNSEL: Call Alison Herndon.
THE COURT: All right. Before we do that, let me make a statement. You're calling her. She ain't going to get up there and plead no Fifth Amendment?
COUNSEL: No, she's not.
THE COURT: I want to make sure that wasn't going to happen because you-somebody might be going to jail then. I just want to let you know. I'm not doing no Fifth Amendment.
*291 After defense counsel's direct examination, the trial court denied Mr. Herndon's counsel the right to cross-examination, explaining that "I was going to let you all ask two questions, but we're about [out] of time for them now." The court then asked Ms. Herndon a series of questions, some of which concerned whether Ms. Herndon had admitted in text messages that she was drugging her husband. Ms. Herndon answered many of those questions with variations of "I don't recall" or "I don't remember."
*144 After these questions concluded, the trial court announced its ruling. The court stated that it did not believe Ms. Herndon's testimony: "I find your limited testimony you did talk about to be not credible that you don't remember." The court then made a series of additional findings and conclusions and later entered a written domestic violence protective order. Ms. Herndon timely appealed.
Analysis
Among the many arguments presented in this appeal, Ms. Herndon contends that her Fifth Amendment rights were violated when the trial court stated "You're calling her. She ain't going to get up there and plead no Fifth Amendment" and that "I want to make sure that wasn't going to happen because you-somebody might be going to jail then. I just want to let you know. I'm not doing no Fifth Amendment." We agree that these statements violated Ms. Herndon's Fifth Amendment rights and require us to vacate and remand this matter for a new hearing that disregards Ms. Herndon's previous testimony.
The Fifth Amendment protects an individual from being compelled to testify in a way that could incriminate her or subject her to fines, penalties, or forfeiture. See State v. Pickens, 346 N.C. 628, 637, 488 S.E.2d 162, 166 (1997). To determine whether the Fifth Amendment privilege applies, the trial court must evaluate whether, given the implications of the question and the setting in which it was asked, a real danger of self-incrimination by the witness exists. Id. at 637, 488 S.E.2d at 167. The court can reject a claim of Fifth Amendment privilege only if there is no possibility of such danger. Id. at 637, 488 S.E.2d at 167.
Importantly, the "privilege against self-incrimination is intended to be a shield and not a sword." McKillop v. Onslow County, 139 N.C.App. 53, 63, 532 S.E.2d 594, 601 (2000). As a result, although a witness does not "forego the right to invoke on cross-examination the privilege against self-incrimination" merely by choosing to testify willingly in a civil proceeding, that choice is a waiver of the right with regard to "matters raised by [the witness's] own testimony on direct examination."
*292 Brown v. United States, 356 U.S. 148, 154-56, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). Indeed, it is hornbook law that "[a] party to or other witness in a civil proceeding does not waive his privilege merely by taking the stand." Testifying in civil proceedings as waiver of privilege against self-incrimination, 72 A.L.R.2d 830 (2014) (collecting cases). When a witness chooses to testify, "the privilege is not lost as to matters wholly unrelated to and not connected with the subject of the direct examination." Id.
In Brown, the Supreme Court held that the decision whether to permit invocation of the Fifth Amendment in a civil proceeding is one that can be made only after the trial court considers what the witness "said on the stand." Id. at 157, 78 S.Ct. 622. In other words, the determination that a witness may not invoke the Fifth Amendment cannot be made simply because the witness "physically took the stand." Id.
That is precisely what happened here. The trial court first sought to confirm with Ms. Herndon's counsel that, if Ms. Herndon testified, "[s]he ain't going to get up there and plead no Fifth Amendment." The court then threatened to imprison Ms. Herndon (or her counsel) if Ms. Herndon invoked her Fifth Amendment rights during her testimony: "I want to make sure that wasn't going to happen because you-somebody might be going to jail then. I just want to let you know. I'm not doing no Fifth Amendment."
Under Brown, the trial court's statements violated Ms. Herndon's Fifth Amendment rights. Ms. Herndon was left with the choice of forgoing her right to testify at a hearing where her liberty was threatened or forgoing her constitutional right against self-incrimination. It was error for the trial court to place her in that impossible situation. Moreover, the error was prejudicial and "amounts to the denial of a substantial right." N.C. R. Civ. P. 61. Although Ms. Herndon's direct testimony did not address her alleged drugging of her husband, the trial court asked her about text messages that corroborated this allegation. Ms. Herndon responded to these questions with variations of "I don't recall" and "I don't remember." The trial court *145 then relied on those answers to determine that Ms. Herndon's testimony was not credible. The trial court's threat to imprison Ms. Herndon if she invoked her Fifth Amendment rights may have forced Ms. Herndon to answer these questions differently than she otherwise would have if she felt free to assert that constitutional right.
The dissent asserts that Ms. Herndon waived her Fifth Amendment rights when her counsel indicated that Ms. Herndon did not plan to invoke those rights. But Ms. Herndon's counsel could not have anticipated that *293 the trial court, on its own initiative, would ask Ms. Herndon questions well beyond the scope of the direct testimony. Thus, counsel's statement that Ms. Herndon would not invoke her Fifth Amendment rights is more reasonably viewed as addressing the scope of her testimony on direct.[1] And, in any event, a trial court cannot demand that a witness waive her Fifth Amendment rights in order to testify in her own defense-particularly in a proceeding like this one, where Ms. Herndon's fundamental right to be with her children is at stake. See Jenkins v. Wessel, 780 So.2d 1006, 1008 (Fla.Dist.Ct.App.2001) (discussing the scope of Fifth Amendment waiver for testimony during a domestic violence protective order hearing).
The dissent also cites McKillop v. Onslow County, 139 N.C.App. 53, 63, 532 S.E.2d 594, 601 (2000), a case in which this Court found a complete waiver of a party's Fifth Amendment rights. But McKillop involved a plaintiff who initiated the legal proceedings by challenging the constitutionality of an ordinance regulating adult businesses. This Court held that "if a plaintiff seeks affirmative relief or a defendant pleads an affirmative defense [,] he should not have it within his power to silence his own adverse testimony when such testimony is relevant to the cause of action or the defense." Id. (emphasis added). Here, by contrast, Ms. Herndon is defending an action brought against her, seeking a protective order that would prevent her from contacting her own children. As the Florida District Court of Appeal acknowledged in Jenkins, a defendant in this circumstance is entitled to invoke the Fifth Amendment in response to questions beyond the scope of her direct testimony. See 780 So.2d at 1008.
Finally, the dissent notes that Ms. Herndon "presents no substantive authority in support of her argument." To be sure, there are few citations to legal authority in this section of Ms. Herndon's brief, but Ms. Herndon quoted the portion of the hearing transcript containing the trial court's challenged statements, asserted a violation of the Fifth Amendment, and cited both the Fifth Amendment to the U.S. Constitution and a U.S. Supreme Court case discussing the scope of Fifth Amendment rights. We believe that is sufficient to satisfy Rule 28(b)(6) of the Rules of Appellate Procedure. Indeed, Mr. Herndon had no difficulty understanding and responding to this argument; his Appellee Brief cites and discusses both Brown and McKillop.
*294 In sum, we hold that the trial court violated Ms. Herndon's Fifth Amendment rights. We therefore vacate and remand this case for a new hearing. At that hearing, the trial court should disregard Ms. Herndon's testimony from the previous hearing. If Ms. Herndon chooses to testify at the new hearing, the trial court should assess any invocation of the Fifth Amendment under the test established by the Supreme Court in Brown.[2]
This appeal also raises several other evidentiary issues, one of which involves an issue of first impression with a constitutional *146 dimension concerning the right to privacy in the marital relationship. We cannot address those issues. As explained above, we must vacate and remand this case for a new hearing. At that hearing, the trial court may not rule the same way on these evidentiary issues, or the parties may choose to present different evidence and these issues might never arise. Thus, our discussion of those issues in this opinion would be non-binding dicta, see Trustees of Rowan Tech. College v. J. Hyatt Hammond Associates, Inc., 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985), or, worse yet, might be an impermissible advisory opinion, Kirkman v. Wilson, 328 N.C. 309, 312, 401 S.E.2d 359, 361 (1991). Moreover, with respect to the issue concerning the right to privacy, addressing it would violate the long-standing principle that "the courts of this State will avoid constitutional questions, even if properly presented, where a case may be resolved on other grounds." Anderson v. Assimos, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002). Accordingly, for the reasons discussed above, we vacate and remand this case based on the violation of Ms. Herndon's Fifth Amendment rights, and decline to reach the remaining issues raised on appeal.
Conclusion
For the reasons stated above, we vacate and remand the trial court's entry of the domestic violence protective order and remand this matter for further proceedings.
VACATED AND REMANDED.
*295 Judge STEPHENS concurs.
Judge BRYANT dissents by separate opinion.

Notably, in his Appellee Brief, Mr. Herndon does not contend that this statement constituted a waiver.

We note that Ms. Herndon's invocation of her Fifth Amendment rights in response to certain questions by the court, or counsel on cross-examination, will not impede the court's ability to find the truth in a civil hearing. "The finder of fact in a civil cause may use a witness' invocation of his Fifth Amendment privilege against self-incrimination to infer that his truthful testimony would have been unfavorable to him." McKillop, 139 N.C.App. at 63-64, 532 S.E.2d at 601. Thus, if Ms. Herndon refuses to answer certain questions based on her Fifth Amendment rights, the trial court may draw an adverse inference supporting Mr. Herndon's request for the protective order.