IN THE SUPREME COURT OF NORTH CAROLINA

No. 363A15

Filed 10 June 2016

STEVEN CRAIG HERNDON

v.

ALISON KINGREY HERNDON

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 777 S.E.2d 141 (2015), vacating an order entered on 10 September 2014 by Judge Doretta L. Walker in District Court, Durham County, and remanding for further proceedings. Heard in the Supreme Court on 17 February 2016.

*Foil Law Offices, by N. Joanne Foil and Laura E. Windley, for plaintiff-appellant.*

*Tharrington Smith, LLP, by Jill Schnabel Jackson and Evan B. Horwitz, for defendant-appellee.*

BEASLEY, Justice.

We consider whether the Court of Appeals erred by granting defendant a new hearing based upon the conclusion that the trial court violated defendant's Fifth Amendment rights. For the reasons stated herein, we reverse the decision of the Court of Appeals.

On 21 May 2014, Steven Craig Herndon (plaintiff) filed a Complaint and Motion for Domestic Violence Protective Order (DVPO) against his wife, Alison

Kingrey Herndon (defendant). Plaintiff also sought temporary custody of their four minor children. The complaint alleged that on several occasions, defendant placed in plaintiff's food and drink unknown substances that caused him to become incapacitated, and that during those periods of incapacitation, defendant would leave the home occupied by plaintiff and their children to visit the home of her paramour. The district court judge entered an ex parte DVPO against defendant, ordering that there be no contact between plaintiff and defendant and awarding temporary custody of the children to plaintiff. On 27 May 2014, in a separate action, defendant filed a complaint seeking temporary and permanent custody of the minor children. On 23 July 2014, plaintiff filed an answer and counterclaim seeking child custody.

On 10 September 2014, plaintiff's motion for DVPO and defendant's custody complaint came on for hearing before the Honorable Doretta L. Walker in District Court, Durham County. Several witnesses took the stand, including a computer forensics expert, a private investigator, plaintiff, defendant's paramour, defendant's friend, and defendant. After plaintiff rested his case-in-chief and before defendant took the stand, the following exchange occurred:

> [DEFENSE COUNSEL]: Call Alison Herndon.
>
> THE COURT: All right. Before we do that, let me make a statement. You're calling her. She ain't going to get up there and plead no Fifth Amendment?
>
> [DEFENSE COUNSEL]: No, she's not.
>
> THE COURT: I want to make sure that wasn't going

> to happen because you -- somebody might be going to jail then. I just want to let you know. I'm not doing no Fifth Amendment.
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: Okay. Call your witness.
>
> [DEFENSE COUNSEL]: Alison Herndon.

Defendant testified on direct examination about her work schedule, her relationship with plaintiff and the children, and her affair. Defendant also discussed plaintiff's allegation that on 11 April 2014, defendant put an incapacitating substance in his mashed potatoes during one of their daughter's birthday party. When defense counsel concluded her examination of defendant, the trial court denied plaintiff's counsel the opportunity to cross-examine defendant because the time allotted for the hearing had almost expired. Instead, the trial court asked defendant questions related to the events of 11 April 2014 and certain exhibits that had been admitted into evidence by plaintiff related both to text messages and photographs exchanged between defendant and her paramour. After hearing the evidence, the trial court entered a DVPO and temporary custody order in favor of plaintiff, granting defendant supervised visitation. The trial court did not make any ruling on defendant's separate permanent custody action.

On appeal to the COA, defendant argued that the trial court's comments preceding her testimony "had a chilling effect on the defense," thereby depriving

defendant of her right against self-incrimination.[1]  Defendant cited the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 23 of the North Carolina Constitution, and *Malloy v. Hogan*, 378 U.S. 1, 6, 12 L. Ed. 2d 653, 658 (1964), in support of her argument.

A divided panel of the COA held that the trial court infringed upon defendant's right against self-incrimination, relying principally on the United States Supreme Court's decision in *Brown v. United States*, 356 U.S. 148, 2 L. Ed. 2d 589 (1958). *Herndon v. Herndon*, ___ N.C. App. ___, ___, ___, 777 S.E.2d 141, 143, 145 (2015). First, the Court of Appeals acknowledged that a witness, by taking the stand, waives the Fifth Amendment privilege on cross-examination "with regard to 'matters raised by [the witness's] own testimony on direct examination.' "  *Id.* at ___, 777 S.E.2d at 144 (alteration in original) (quoting *Brown*, 356 U.S. at 156, 2 L. Ed. 2d at 597). Second, the Court of Appeals observed that a trial court cannot determine whether a witness may invoke the privilege based solely upon the witness's physical act of taking the stand.  *Id.* at ___, 777 S.E.2d at 144 (citing *Brown*, 356 U.S. at 157, 2 L. Ed. 2d at 598).  The Court of Appeals majority reasoned that the trial court erred by requiring defendant to choose between "forgoing her right to testify at a hearing where her liberty was threatened or forgoing her constitutional right against self-

---

[1] Defendant also argued that the trial court erred by admitting into evidence certain electronic communications, and that, consequently, there was insufficient evidence to support the trial court's findings that defendant had committed domestic violence against plaintiff.

incrimination." *Id.* at ___, 777 S.E.2d at 144. Moreover, the Court of Appeals majority concluded that the trial court's line of questioning was outside the scope of defendant's direct examination, in violation of the rule articulated in *Brown*. *Id.* at ___, 777 S.E.2d at 144. For those reasons, the Court of Appeals vacated the trial court's order and remanded the case for a new hearing with instructions that the trial court disregard defendant's previous testimony and "assess any invocation of the Fifth Amendment under the test established by the Supreme Court in *Brown*." *Id.* at ___, 777 S.E.2d at 145.

The dissenting judge would have found that defendant waived her Fifth Amendment privilege. *Id.* at ___, 777 S.E.2d at 147 (Bryant, J., dissenting). The dissent criticized the majority's reading of *Brown* as "overly technical" and reasoned that *Brown* stands for the proposition that when a witness voluntarily testifies, she cannot "invoke the privilege against self-incrimination as to relevant matters." *Id.* at ___, 777 S.E.2d at 148 (citing *McKillop v. Onslow County*, 139 N.C. App. 53, 64-65, 532 S.E.2d 594, 601 (2000)). The dissent concluded that "it was within the inherent power of the trial court to ascertain from defendant that she chose to testify voluntarily and waive her privilege against self-incrimination," and added that, despite "the less than artful phraseology," the trial court's statements put defendant on notice of her duty to testify truthfully. *Id.* at ___, 777 S.E.2d at 149 (citing *Brown*, 356 U.S. at 156, 2 L. Ed. 2d at 597).

Plaintiff gave timely notice of appeal based upon the dissent. We review alleged violations of constitutional rights de novo. *E.g.*, *Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 353 N.C. 343, 348, 543 S.E.2d 844, 848 (2001).

Before this Court, plaintiff argues that the trial court did not violate defendant's right against self-incrimination because the trial court's inquiry was entirely within the scope of the testimony elicited on direct examination. We agree.

The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, *Malloy*, 378 U.S. at 6, 12 L. Ed. 2d at 658, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This Fifth Amendment protection extends to civil proceedings. *Allred v. Graves*, 261 N.C. 31, 35, 134 S.E.2d 186, 190 (1964) (citation omitted), *superseded in part by statute*, Act of June 21, 1977, ch. 649, sec. 1, 1977 N.C. Sess. Laws, 761, 761-62. "[T]he claim of privilege 'should be liberally construed.'" *State v. Pickens*, 346 N.C. 628, 637, 488 S.E.2d 162, 167 (1997) (quoting *Allred*, 261 N.C. at 35, 134 S.E.2d at 189). Moreover, the privilege "protects against real, not remote and speculative dangers." *State v. Ballard*, 333 N.C. 515, 520, 428 S.E.2d 178, 181 (citing *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478, 32 L. Ed. 2d 234, 240 (1972)), *cert. denied*, 510 U.S. 984, 126 L. Ed. 2d 438 (1993). "The privilege, to be sustained, need be evident only from the implications of the question and in the setting in which it is asked. These must show only that a responsive answer to the question or an explanation of why it cannot be answered

might be dangerous because injurious disclosure could result." *Id.* at 520, 428 S.E.2d at 181 (quoting *Hoffman v. United States,* 341 U.S. 479, 486-87, 95 L. Ed. 1118, 1124 (1951)).

Depending on whether a witness is compelled to testify or testifies voluntarily, the right against self-incrimination operates differently. This distinction, explored by the Supreme Court in *Brown*, arises from a need to balance the constitutional right to protect against self-incrimination with a party's interest in attacking the credibility of a witness and the interest of the court in ascertaining the truth. *Brown*, 356 U.S. at 155-56, 2 L. Ed. 2d at 597. A compelled witness "has no occasion to invoke the privilege against self-incrimination until testimony sought to be elicited will in fact tend to incriminate." *Id.* at 155, 2 L. Ed. 2d at 597. When the compelled witness's privilege is triggered, the normal right of cross-examination becomes secondary to the constitutional protection against compulsory self-incrimination. *Id.* at 155, 2 L. Ed. 2d at 597. By contrast, a voluntary witness has the benefit of choosing whether to testify and "determines the area of disclosure and therefore of inquiry." *Id.* at 155, 2 L. Ed. 2d at 597. For that reason, a voluntary witness cannot claim "an immunity from cross-examination on the matters he has himself put in dispute." *Id.* at 156, 2 L. Ed. 2d at 597.

The Court of Appeals majority identified the trial court's error as follows:

> In *Brown*, the Supreme Court held that the decision
> whether to permit invocation of the Fifth Amendment in a
> civil proceeding is one that can be made only after the trial

> court considers what the witness "said on the stand."
> [*Brown*, 356 U.S.] at 157. In other words, the
> determination that a witness may not invoke the Fifth
> Amendment cannot be made simply because the witness
> "physically took the stand." *Id.*
> That is precisely what happened here.

*Herndon*, ___ N.C. App. at ___, 777 S.E.2d at 144 (majority).

In *Brown* the petitioner was subjected to a denaturalization hearing after being charged with fraudulently procuring citizenship by falsely swearing, *inter alia*, that she had not been a member of the Communist Party. 356 U.S. at 149, 2 L. Ed. 2d at 593-94. In the proceeding, during the Government's case-in-chief, the petitioner refused to answer the Government's questions related to her participation in Communist activities and successfully asserted her Fifth Amendment privilege. *Id.* at 150, 2 L. Ed. 2d at 594. Subsequently, during the petitioner's case-in-chief, the petitioner took the stand as a witness on her own behalf and answered the questions posed by her attorney related to Communist activities, but refused to answer the questions posed by the Government on cross-examination, claiming a Fifth Amendment privilege. *Id.* at 150-52, 2 L. Ed. 2d at 594-95. The trial court overruled the petitioner's claim of privilege, reasoning that "by taking the stand in her own defense petitioner had abandoned the privilege." *Id.* at 152, 2 L. Ed. 2d at 595. The trial court ultimately held the petitioner in contempt for continuing to refuse to answer questions on cross-examination. *Id.* at 152, 2 L. Ed.2d at 595. On appeal from her conviction for contempt of court, the petitioner argued that she did not waive

her privilege against self-incrimination by taking the stand. *Id.* at 154, 2 L. Ed. 2d

at 596. The Supreme Court affirmed the trial court's ruling, explaining that

> [i]n view of the circumstances surrounding this ruling and the testimony that preceded it, it is reasonably clear that the court meant to convey by "having taken the stand in her own defense" what she said on the stand, not merely that she physically took the stand. . . . Taken in context, the ruling of the District Court conveyed a correct statement of the law, and adequately informed petitioner that by her direct testimony she had opened herself to cross-examination on the matters relevantly raised by that testimony.

*Id.* at 157, 2 L. Ed. 2d at 598.

Like in *Brown*, the context in which the Fifth Amendment issue arose here is

important. During plaintiff's case-in-chief plaintiff called defendant's paramour, a

compelled witness, to the stand. The paramour invoked his Fifth Amendment right

against self-incrimination concerning questions related to his relationship with

defendant and the text messages that had been exchanged between them.

Thereafter, during defendant's case-in-chief but before defendant took the stand, the

trial court asked defense counsel whether defendant intended to invoke the Fifth

Amendment, to which counsel twice responded in the negative. At no point during

direct examination or the trial court's questioning did defendant, a voluntary witness,

give any indication that answering any question posed to her would tend to

incriminate her. Put simply, defendant never attempted to invoke the privilege

against self-incrimination, which distinguishes this case from *Brown*. We are not

aware of, and the parties do not cite to, any case holding that a trial court infringes upon a witness's Fifth Amendment rights when the witness does not invoke the privilege.

In addition, the Court of Appeals majority concluded that the trial court's inquiry was improper because defendant's "direct testimony did not address her alleged drugging of her husband" or the "text messages that corroborated this allegation." *Herndon*, ___ N.C. App. at ___, 777 S.E.2d at 144. Yet, the record reveals otherwise. During defense counsel's direct examination of defendant, the following exchange occurred:

> Q. Did he ever say anything to you at all about being fearful?
>
> A. No, ma'am.
>
> Q. Or believing that you poisoned him?
>
> A. No, ma'am.
>
> . . . .
>
> Q. Did you drug him?
>
> A. No, ma'am.
>
> . . . .
>
> Q. And [the computer forensics expert] read text messages -- excuse me. He read text messages and I'm going [sic] summarize where it appeared to make reference to drugging Craig or giving him an Ambien and do you -- what do you know about those text messages?

A.      I mean, I only know what [plaintiff's counsel] has given me, text message-wise, or what I've read that they had printed out.

Q.      Did you send the text messages?

A.      I sent some text messages. Did I send text messages about drugging Craig? No.

Q.      Do you recall ever making a joke about -- about drugging him to anyone?

A.      I don't remember -- I don't recall making jokes about drugging him. I -- I remember joking about -- I don't -- I mean, I don't know exactly what it said, but I -- I would -- I very likely said -- I don't -- I really don't know.

At the completion of defendant's direct examination, the trial court asked defendant whether she sent the text messages referenced in plaintiff's exhibit number four,[2] to which defendant replied, "I don't recall, Your Honor." The trial court also asked defendant whether she sent the photographs in plaintiff's exhibit number twenty-three,[3] to which defendant replied, "Well, the ones on April 11th are the ones with my bathing suit on. Yes, ma'am. I probably did." It is clear that defendant's direct testimony did, in fact, address the allegation that defendant drugged plaintiff and the

---

[2] Plaintiff's exhibit number four contained text messages allegedly sent by defendant to her paramour indicating that on 11 April 2014, she intentionally put pills in plaintiff's food so that he would "pass out," giving her the opportunity to leave the house and meet with the paramour.

[3] Plaintiff's exhibit number twenty-three contained photographs extracted from text messages allegedly sent from defendant to her paramour.

text messages that tended to corroborate the allegation. The trial court, in its questioning of defendant, inquired into matters within the scope of that which was put into dispute on direct examination by defendant. Therefore, even if defendant had attempted to invoke the Fifth Amendment, under the rule in *Brown* the privilege was not available to defendant during the trial court's inquiry.

Defendant contends that the Court of Appeals decision in *Qurneh v. Colie*, 122 N.C. App. 553, 471 S.E.2d 433 (1996), controls the outcome in this case. Specifically, defendant argues that in *Qurneh* the plaintiff was given the opportunity to invoke the Fifth Amendment privilege and still pursue his custody claim, whereas defendant was required to choose between invoking the privilege and going to jail, or pursuing her temporary custody claim. We are not persuaded.

In *Qurneh* the plaintiff-father invoked the Fifth Amendment to avoid responding to questions posed during a custody hearing about his involvement with illicit drugs. 122 N.C. App. at 556, 471 S.E.2d at 434-35. Balancing the interests of the parties, the trial court concluded that the plaintiff used the privilege as both a shield and a sword by introducing evidence of his fitness and then prohibiting the defendant from rebutting that evidence with proof of his unfitness. *Id.* at 558, 471 S.E.2d at 436. As a result, the Court of Appeals affirmed the trial court's dismissal of the plaintiff's custody claim, reasoning that "the trial court was unable to consider pertinent information in determining plaintiff's fitness," *id.* at 559, 471 S.E.2d at 436, which was an element of the plaintiff's prima facie case, *id.* at 558-60, 471 S.E.2d at

436-37. The present case is factually distinguishable from *Qurneh*. Unlike in *Qurneh*, the trial court here was able to consider all the pertinent evidence because defendant did not invoke the Fifth Amendment privilege. Instead, defendant voluntarily took the stand and testified about the domestic violence allegations against her, her marriage, her relationship with her children, and her ability to care for them. The Court of Appeals decision in *Qurneh* does not support a conclusion that the trial court in this case violated defendant's Fifth Amendment rights.

We hold, therefore, that the Court of Appeals erred by granting defendant a new hearing. We acknowledge that the trial court's conduct was inappropriate and that the trial judge should not have threatened defendant with jail; however, we do not believe the trial judge's actions amounted to a constitutional violation. Defendant did not invoke the privilege against self-incrimination. Defense counsel did not make an offer of proof, object, or otherwise demonstrate a concern for defendant's constitutional rights.[4] Defendant was in control of her testimony by virtue of her decision to take the stand. Defense counsel asked defendant plainly whether she

---

[4] We recognize that North Carolina Rules of Evidence Rule 614(c) provides that "[n]o objections are necessary with respect to . . . questions propounded to a witness by the court but it shall be deemed that proper objection has been made and overruled." This rule operates to preserve for appellate review the impropriety of a trial court's interrogation of a witness even if a party does not object. It does not apply when, as here, a party argues that the trial court's inquiry infringed upon a litigant's privilege against compelled self-incrimination. *Cf. State v. Garcia*, 358 N.C. 382, 410, 597 S.E.2d 724, 745 (2004) ("It is well settled that constitutional matters that are not 'raised and passed upon' at trial will not be reviewed for the first time on appeal." (citations omitted)), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005).

drugged plaintiff and the trial court asked questions tending to corroborate plaintiff's domestic violence allegations.  We cannot say, in view of these circumstances, that the trial court infringed upon defendant's Fifth Amendment right against self-incrimination.

Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for consideration of defendant's alternative bases for appeal.

REVERSED AND REMANDED.